**RICHLAND BOOKMART, INC.,**
**d/b/a Town and Country,**
**Plaintiff–Appellee,**

v.

**Randall E. NICHOLS, Defendant–**
**Appellant.**

**No. 96–6472.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 1, 1997.

Decided Feb. 27, 1998.

Rehearing and Suggestion for Rehearing
En Banc Denied April 23, 1998.

Frierson M. Graves, Jr. (argued and briefed), Baker, Donelson, Bearman & Caldwell, Memphis, TN, for Plaintiff–Appellee.

Steven A. Hart (argued and briefed), Office of the Attorney General, Criminal Justice Division, Michael J. Fahey, II (briefed), Asst. Atty. Gen., Office of the Attorney General, Nashville, TN, for Defendant–Appellant.

Before: MERRITT, BATCHELDER, and FARRIS,* Circuit Judges.

## OPINION

MERRITT, Circuit Judge.

The defendant below, Randall E. Nichols, District Attorney for Knox County, Tennes-

---

* The Honorable Jerome Farris, Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

see, appeals a permanent injunction entered by the district court against enforcement of statutory amendments to the Tennessee Adult–Oriented Establishment Act. The new statute limits the hours and days during which adult entertainment establishments can be open and requires such establishments to eliminate the closed booths in which patrons watch sexually-explicit videos or live entertainment.

The injunction was entered after plaintiff, Richland Bookmart, Inc., an adult bookstore in Knox County, Tennessee, challenged the constitutionality of the state law on the grounds that it violates the First Amendment and the Equal Protection Clause of the United States Constitution. The district court held that although the statute was content-neutral, the hours and days limitation violated the First Amendment because it was not narrowly tailored to address the stated goal of the statute—the alleged deleterious "secondary effects" on neighborhoods and families caused by the presence of adult establishments. Having decided the case on the First Amendment ground, the district court did not reach plaintiff's equal protection argument. For the reasons stated below, the judgment of the district court is reversed and the case is remanded to the district court with instructions to vacate the permanent injunction.

## I. The Statute in Question

On June 26, 1995, plaintiff, Richland Bookmart, Inc., a seller of sexually-explicit books, magazines and videos, filed a complaint for preliminary injunction, permanent injunction and declaratory judgment requesting that the district court declare Tennessee's Adult Oriented Establishment Act (1995 Tenn. Pub. Act 421, codified at Tenn.Code Ann. §§ 7–51–1401 *et seq.*) to be unconstitutional on its face or as applied to plaintiff. After a hearing on the preliminary injunction, the district court issued a preliminary injunction enjoining enforcement of the act. The injunction

was made permanent on September 26, 1996, and defendant, District Attorney General for Knox County Randall Nichols, appealed to this Court.

Presumably in anticipation of expected First Amendment challenges, the act contains a lengthy preamble. Because the district court carefully summarized the long preamble, we will highlight only relevant portions here.

The preamble discusses the need to outlaw closed video booths because these booths are often used by patrons to stimulate themselves sexually, creating a public health problem. This provision does not apply to plaintiff. It does not have closed booths on its premises. Plaintiff sells adult books and magazines and sells and rents adult videos for off-premises viewing only. The preamble also lists detrimental health, safety and welfare problems caused by shops selling graphic sexual material—the so-called "secondary effects," of the establishments on the communities that surround them—and cites specific land-use studies done by other cities on the subject. The "secondary effects" identified include "increased crime, downgrading of property values and spread of sexually transmitted and communicable diseases."

The preamble continues with a list of "unlawful and/or dangerous sexual activities" associated with adult-oriented establishments and ends with a list of citations to judicial decisions supporting such legislation.

The act defines "adult-oriented establishment" as "any commercial establishment ... or portion thereof" selling as its "predominant stock or trade ... sexually oriented material." [1]

"Sexually-oriented material" is defined as any publication "which depicts sexual activity ... or which exhibits uncovered human genitals or pubic region in a lewd or lascivious manner or which exhibits human male geni-

---

1. The complete definition is as follows:
   any commercial establishment, business or service, or portion thereof, which offers, as its principal or predominant stock or trade, sexually oriented material, devices, or paraphernalia or specified sexual activities, or any combi-

nation or form thereof, whether printed, filmed, recorded or live and which restricts or purports to restrict admission to adults or to any class of adults.
Chapter 421, Section 2(4).

tals in a discernibly turgid state, even if completely covered." [2]

Section 3 prohibits adult-oriented establishments from opening before 8 a.m. or after midnight Monday through Saturday, and from being open at all on Sundays or the legal holidays listed in the Tennessee Code Annotated.

Section 4 prevents the use of private booths, stalls or partitioned rooms for sexual activity. Because plaintiff here does not have any private booths, the district court did not address this portion of the act.

Section 5 describes the criminal penalties under the act. A first offense for a violation is a Class B misdemeanor punishable by a fine of $500. Subsequent violations are Class A misdemeanors with no penalty specified in the statute. The Tennessee Code provides that Class A misdemeanors carry a penalty for a fine not to exceed $2500, imprisonment not to exceed 11 months and 29 days or both, unless the statute provides otherwise. Tenn. Code Ann. § 40–35–111.

Section 6 states that live stage shows, adult cabaret and dinner theatre are excepted from the closing hours requirement. Section 7 allows local governments to impose other "lawful and reasonable" restrictions on adult-oriented establishments.

Plaintiff contends that the law violates both its First Amendment rights through the closing hours requirement and its equal protection rights by exempting certain other establishments that sell or trade in adult-oriented goods or services as at least part of their business.

The district court granted a preliminary injunction, later made permanent, against enforcement of the act, finding that the closing hours restrictions violate the First Amendment. The district court concluded that plaintiff was likely to succeed on the merits of its constitutional challenge because the act (1) goes beyond what is necessary to further the state's legitimate interest in regulating the secondary effects described in the act's preamble, (2) is overbroad and (3) is vague. The district court did not reach plaintiff's equal protection argument.

## II. Analysis of Facial Validity of the Statute

This case arises from the tension between two competing interests: free speech protection of erotic literature and giving communities the power to preserve the "quality of life" of their neighborhoods and prevent or clean up "skid-rows." The tension arises because the First Amendment offers some protection for "soft porn," *i.e.,* sexually-explicit, nonobscene material—although "society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate...." *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 70, 96 S.Ct. 2440, 2452, 49 L.Ed.2d 310 (1976). The Supreme Court most recently restated this view that "porn-type" speech is generally afforded less-than-full First Amendment protection in *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (nude dancing).

█ The normal starting point for a discussion of the facial validity of statutory regulation of speech requires an analysis of the so-called "content-neutrality" of the regulation. Here, the bookstore contends that the act is a "content-based" regulation and therefore presumptively unconstitutional and subject to "strict scrutiny." The defendant prosecutor argues that the act is content-neutral and that the closing requirements are permissible "time, place and manner" regulation subject to the less exacting "intermediate scrutiny."

We agree with plaintiff that the legislation at issue here is obviously not content-neutral. The statute focuses on and regulates only

---

**2.** The complete definition of "sexually oriented material" is as follows:

any book, article, magazine, publication or written matter of any kind, drawing, etching, painting, photograph, motion picture film or sound recording, which depicts sexual activity, actual or simulated, involving human beings or human beings and animals, or which exhibits uncovered human genitals or pubic region in a lewd or lascivious manner or which exhibits human male genitals in a discernibly turgid state, even if completely covered.

Chapter 421, Section 2(10).

"sexually-explicit" or porn-type speech. This is no more content neutral than a statute designed to regulate only political campaign advertising, newspaper want ads or computer graphics. The law singles out certain establishments for regulation based only on the type of literature they distribute. *But see Barnes*, 501 U.S at 585, 111 S.Ct. at 2470 (Souter, J., concurring) and *Mitchell v. Commission on Adult Entertain. Estabs.*, 10 F.3d 123 (3d Cir.1993) (describing regulation of such sex literature as content neutral because it is designed to counter bad behavior in the neighborhood where it is sold).

■ The fact that such regulation is based on content does not necessarily mean that regulation of nonobscene, sexually-explicit speech is invalid. The law developed under the First Amendment offers such speech protection "of a wholly different, and lesser magnitude." *Young v. American Mini Theatres*, 427 U.S. at 70, 96 S.Ct. at 2452. In *American Mini Theatres*, the Court expressly ruled that the City of Detroit may legitimately use the content of adult motion pictures as the basis for treating them differently from other motion pictures. In order to prevent and clean up skid-rows, the ordinance confined theatres showing sex movies to a few areas of the city. A plurality of the Court upheld a content-based zoning ordinance restricting the location of adult movie theatres. The Court held that even though such sexually-explicit literature, unlike obscenity, is protected from total suppression, "the State may use the content of these materials as the basis for placing them in a different classification from other motion pictures." *Id.* at 70–71, 96 S.Ct. at 2452. Justice Steven's opinion is straightforward and clear. It says that "there is surely a less vital interest in the uninhibited exhibition of material that is on the borderline between pornography and artistic expression than in the free dissemination of ideas of social and political significance." *Id.* at 61, 96 S.Ct. at 2448. The Court concluded that the classification made by the City of Detroit was justified by the City's interest in preserving its neighborhoods from deterioration—the now so-called "secondary effects" of erotic speech. The ordinance was upheld because it did not unduly suppress access to lawful speech. *American Mini Theatres* recognized that regulation based on content may be necessary to protect other legitimate interests. The Court did not try to maintain that the ordinance *was*, in fact, content-neutral; it stated only that it might be *treated* as if it were content-neutral because, like commercial speech, it is less than fully protected.

■ Justice Powell, concurring in *American Mini Theatres*, elaborated on the special circumstances presented when reviewing regulation of erotic or sexually-explicit speech:

> Moreover, even if this were a case involving a special government response to the content of one type of movie, it is possible that the result would be supported by a line of cases recognizing that the government can tailor its reaction to different types of speech according to the degree to which its special and overriding interests are implicated.

*American Mini Theatres*, 427 U.S. at 82 n. 6, 96 S.Ct. at 2458 n. 6 (cases omitted). Justice Powell specifically pointed out that sexually-explicit speech is different from other kinds of speech and, although protected to a certain degree, is offered less protection because other important social interests are at stake when sexually-explicit speech is at issue. Erotic or sexually-explicit literature is in a unique category, a category unto itself that the Supreme Court has decided may be regulated without subjecting the regulation to so-called "strict scrutiny" with its accompanying presumption of unconstitutionality.

Many have severely criticized the holding and rationale of *American Mini Theatres*,[3]

---

**3.** Criticism of the analysis used in *American Mini Theatres* and later in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), is extensive in the legal literature. For a representative sample, *see, e.g.*, Laurence Tribe, *American Constitutional Law* § 12–3 (2d ed.1988); Ashutosh Bhagwat, *Purpose Scrutiny in Constitutional Analysis*, 85 Cal. L.Rev. 297, 351–53 (1997); Elena Kagan, *Private Speech, Public Purpose: The Role of Governmental Motive in First Amendment Doctrine*, 63 U. Chi. L.Rev. 413, 483–91 (1996); Marjorie Heins, *Viewpoint*

including initially the four dissenters led by Justice Stewart, but a majority of the Court has adhered to its view allowing anti-skidrow, content-based regulation of establishments selling pornographic literature, movies, dancing and other hard-core erotic material. In a subsequent case, *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), the Court upheld a content-based zoning ordinance enacted by the City of Renton, Washington, that prohibited adult motion picture theatres from locating within 1,000 feet of family dwellings, churches, parks or schools.

The intervening years had reduced the number of dissenters on the Court from four to two. Now it was only Justices Brennan and Marshall in dissent. Relying primarily on *American Mini Theatres*, the Court in *Renton* analyzed the ordinance as a form of time, place and manner regulation, although recognizing that a law that focuses on such films is obviously not content neutral. The Court acknowledged candidly that both ordinances treated adult theatres differently than other types of theatres, the traditional touchstone of content-based legislation.

The Court went on in *City of Renton* to explain that the ordinance did not contravene the fundamental principles that underlie concerns about content-based speech regulations because its stated purpose is to curb the "secondary effects" of adult establishments. Accordingly, the Court in *City of Renton*, like the Court in *American Mini Theatres*, decided that the zoning ordinances at issue could be reviewed under the standard applicable to content-neutral regulations, even though the ordinances were plainly content-based. The stated rationale is that a distinction may be drawn between adult theatres and other kinds of theatres "without violating the government's paramount obligation of neutrality in its regulation of protected communication" because it is seeking to regulate the secondary effects of speech, not the speech itself. *City of Renton*, 475 U.S. at 49, 106 S.Ct. at 929–30 (quoting *American Mini Theatres*, 427 U.S. at 70, 96 S.Ct. at 2452).

Over the last decade, some courts reviewing these type of regulations started simply referring to them as content-neutral without explaining, as the Supreme Court carefully did in both *American Mini Theatres* and *City of Renton*, that they are in fact content-based but are to be *treated* like content-neutral regulations for some purposes. *See, e.g., North Ave. Novelties, Inc. v. City of Chicago*, 88 F.3d 441, 444 (7th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 684, 136 L.Ed.2d 609 (1997); *11126 Baltimore Blvd., Inc. v. Prince George's County, Md.*, 58 F.3d 988, 995 (4th Cir.1995); *ILQ Investments, Inc. v. City of Rochester*, 25 F.3d 1413, 1416 (8th Cir.1994); *TK's Video, Inc. v. Denton County, Tx.*, 24 F.3d 705, 707 (5th Cir.1994); *Mitchell v. Commission on Adult Entertain. Estabs.*, 10 F.3d 123, 128–31 (3d Cir.1993). Thus, in some cases, a kind of legal fiction has been created that calls regulation of such literature "content neutral" when what is meant is only that the regulation is constitutionally valid.

■ Under present First Amendment principles governing regulation of sex literature, the real question is one of reasonableness. The appropriate inquiry is whether the Tennessee law is designed to serve a substantial government interest and allows for alternative avenues of communication. Does the law in question unduly restrict "sexually explicit" or "hard-core" erotic expression?

■ Reducing crime, open sex and solicitation of sex and preserving the aesthetic and commercial character of the neighborhoods surrounding adult establishments is a "substantial government interest." The Tennessee legislature reasonably relied on the experiences of other jurisdictions in restricting the hours of operation. It is not unreasonable to believe that such regulation of hours of shops selling sex literature would tend to deter prostitution in the neighborhood at night or the creation of drug "corners" on the surrounding streets. By deter-

*Discrimination*, 24 Hastings Const. L.Q. 99, 125–28 & n.137 (1996); Robert Post, *Recuperating First Amendment Doctrine*, 47 Stan. L.Rev. 1249, 1265–67 (1995); Keith Werhan, *The Lib-*

*eralization of Freedom of Speech on a Conservative Court*, 80 Iowa L.Rev. 51, 68–70 (1994); Geoffrey R. Stone, *Content–Neutral Restrictions*, 54 U. Chi. L.Rev. 46, 104, 114–17 (1987).

ring such behavior, the neighborhood may be able to ward off high vacancy rates, deteriorating store fronts, a blighted appearance and the lowering of the property values of homes and shopping areas. Such regulation may prevent the bombed-out, boarded-up look of areas invaded by such establishments. At least that is the theory, and it is not unreasonable for legislators to believe it based on evidence from other places.

The legislation leaves open alternative avenues of communication. Access to adult establishments is not unduly restricted by the legislation. Adult establishments may still be open many hours during the week.

### III. Overbreadth and Vagueness

■ Plaintiff contends, and the district court agreed, that the act is also unconstitutionally vague in that certain terms are not defined. We believe the terms are sufficiently defined so that a reasonable person would understand them.

Specifically, the district court found that the act's alleged vagueness may have a "chilling effect" on erotic literature that has "literary, artistic or political value." It also found that the word "paraphernalia" as used in the act might include places such as lingerie shops.

First, the plaintiff's establishment here clearly falls within the purview of the statute. In *American Mini Theatres,* the Court found that it was unnecessary to consider vagueness when an otherwise valid ordinance indisputably applies to the plaintiff—when there is no vagueness as to him. 427 U.S. at 58–59, 96 S.Ct. at 2446–47. *See also City of Renton,* 475 U.S. at 55 n. 4, 106 S.Ct. at 933 n. 4. Plaintiff is clearly an "adult-oriented establishment" as defined in the act. Any element of vagueness in the act does not affect this plaintiff.

Second, the law is not as vague as the bookstore contends. To be included within the purview of the act, an establishment must (1) have as its "principal or predominant stock or trade" sexually-oriented materials, devices or paraphernalia and (2) restrict admission to adults only. The terms used in the act are understandable common terms.

Most buyers, sellers and judges know what such materials are and who are adults and who are children.

The Supreme Court examined overbreadth in detail in *New York v. Ferber,* 458 U.S. 747, 773–74, 102 S.Ct. 3348, 3363–64, 73 L.Ed.2d 1113 (1982). In *Ferber,* the Court refused to find as unconstitutionally overbroad a state statute prohibiting persons from knowingly promoting sex by children under 16 by selling such material. The Court held that the mere possibility that some protected expression, some erotic literature, could arguably be subject to the statute was insufficient reason to find it unconstitutionally overbroad. The Court said that we should not assume that state courts would broaden the reach of a statute by giving it an "expansive construction." This is consistent with Tennessee law that provides that such regulation of speech should be construed narrowly. *Davis–Kidd Booksellers, Inc. v. McWherter,* 866 S.W.2d 520, 526 (Tenn.1993).

\* \* \*

Plaintiff also contends that the act violates its equal protection rights because the act exempts from regulation establishments offering "only live, stage adult entertainment in a theatre, adult cabaret, or dinner show type setting." The district court did not reach this issue and did not issue an injunction on this ground. We express no opinion on whether the act violates plaintiff's equal protection rights because this argument has not been fully developed or reviewed in the district court.

Accordingly, the preliminary injunction issued by the district court is vacated and set aside and the case remanded for further proceedings consistent with this opinion.