## DIMA CORPORATION, Plaintiff–Appellant,

### v.

## TOWN OF HALLIE, Defendant–Appellee.

### No. 98–3997.

United States Court of Appeals, Seventh Circuit.

Argued April 15, 1999.

Decided July 26, 1999.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 24, 1999.

Randall D.B. Tigue (argued), Randall Tigue Law Office, Minneapolis, MN, for Plaintiff–Appellant.

Joel L. Aberg (argued), Weld, Riley, Prenn & Ricci, Eau Claire, WI, for Defendant–Appellee.

Before CUDAHY, COFFEY, and MANION, Circuit Judges.

MANION, Circuit Judge.

In the Town of Hallie, Wisconsin, DiMa Corporation operates an adult bookstore, which is currently open 24 hours per day. After Hallie adopted an ordinance limiting the hours such bookstores may be open, DiMa filed this suit under 42 U.S.C. § 1983 seeking declaratory and injunctive relief against enforcing the ordinance, claiming that the ordinance violates DiMa's free speech rights under the First and Fourteenth Amendments. The district court granted summary judgment for Hallie. Because we conclude that the record sufficiently supports Hallie's claim that the ordinance is a reasonable attempt to control undesirable "secondary effects" rather than an attempt to regulate speech because of its objectionable content, we affirm the district court.

## Background

Hallie is a small town in rural Wisconsin between Eau Claire and Chippewa Falls. DiMa operates the "Pure Pleasure" bookstore in Hallie. Pure Pleasure sells sexually explicit, nonobscene books and magazines, and it has private booths in which a patron can watch sexually explicit, non-obscene video tapes.[1] Since it opened, Pure Pleasure has operated 24 hours per day. In March 1998, Hallie adopted Ordinance No. 98–1, which regulates "adult-oriented establishments," including "adult bookstores." DiMa does not dispute that Pure Pleasure falls within the ordinance's definition of these terms. The ordinance regulates adult-oriented establishments in various ways but in this suit DiMa challenges only one of them: the hours of operation limits contained in Section 1.06. Under that section, an adult-oriented establishment may not be open between 2:00 A.M. and 8:00 A.M. Monday through Friday, between 3:00 A.M. and 8:00 A.M. on Saturday, and between 3:00 A.M. and noon on Sunday. The ordinance thus requires adult bookstores to be closed about one-quarter of the hours during a week. (These are the same hours of operation limits that Wisconsin has placed on establishments that serve alcohol. *See* Wisc. Stat. §§ 125.32(3) & 125.68(4).) Section 1.06 has not yet been enforced: the parties stipulated to an injunction of it while the matter was pending in the district court, and the district court continued that injunction pending the outcome of this appeal.

## Analysis

 The First Amendment provides in part that "Congress shall make no law . . . abridging the freedom of speech, or of the press." Section One of the Fourteenth Amendment incorporated this provision and so it prohibits state government from abridging these freedoms as well. *See, e.g., Gitlow v. New York*, 268 U.S. 652, 666, 45 S.Ct. 625, 69 L.Ed. 1138 (1925); *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 n. 1, 116 S.Ct. 1495, 1501 n. 1, 134 L.Ed.2d 711 (1996).[2] Because the

---

1. There has been no judicial finding, nor even the allegation, that these materials are obscene. Hallie decided to regulate these materials as not obscene and the parties have so treated them in this litigation. We therefore do the same.

2. Although *DiMa* is a corporation rather than a natural person, it may assert a First Amendment challenge. *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 776, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) ("The proper question therefore is not whether corporations 'have'

ordinance has not yet been applied to Pure Pleasure, we are confronted with a facial challenge to the statute, rather than a challenge to the way the statute has been applied to Pure Pleasure. The threshold question in a First Amendment free speech case is whether the challenged law is content-based, that is, whether the law regulates speech based on the ideas or messages it expresses. "Content-based regulations are presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). On the other hand, government is given much more leeway when its content-neutral regulations happen to limit some speech. *See United States v. Wilson*, 154 F.3d 658, 663 (7th Cir.1998) ("If a statute is content-based, it must survive strict scrutiny to be constitutional. If a statute is content-neutral, it is subject only to intermediate scrutiny."). Therefore, government may impose reasonable time, place, and manner restrictions if they are "justified without reference to the content of the regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (internal quotation marks omitted).

■ There are some categorical exceptions to this general analysis, however; government has more freedom to regulate certain kinds of speech, even though it does so based on the content of the speech. Within constitutional limits, government may proscribe obscenity, *see Miller v. California*, 413 U.S. 15, 23, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); child pornography, *see Osborne v. Ohio*, 495 U.S. 103, 111, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990); defama-

tion, *see New York Times Co. v. Sullivan*, 376 U.S. 254, 268, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); and so-called "fighting words," *see Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).[3] The Supreme Court applies yet a different kind of analysis to the category of speech at issue here: sexually explicit, non-obscene materials. Because this speech is not obscene, government may not simply proscribe it. *See Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 66, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) ("[A]n entertainment program [may not] be prohibited solely because it displays the nude human figure."). But because these materials border on the obscene, they are entitled to less First Amendment protection than non-sexually-explicit materials. *See Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 70–71, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) (plurality) ("Even though the First Amendment protects communication in this area from total suppression, we hold that the State may legitimately use the content of these materials as the basis for placing them in a different classification from other motion pictures."). So in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 49, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), the Court held that "at least with respect to businesses that purvey sexually explicit materials, zoning ordinances designed to combat the undesirable secondary effects of such businesses are to be reviewed under the standards applicable to 'content-neutral' time, place, and manner regulations." (Footnote omitted.)

■ As the Sixth Circuit recently noted, the Court's analysis has caused some con-

First Amendment rights and, if so, whether they are coextensive with those of natural persons. Instead, the question must be whether [the legislation in question] abridges expression that the First Amendment was meant to protect."); *see also Covington & L. Turnpike Road Co. v. Sandford*, 164 U.S. 578, 592, 17 S.Ct. 198, 41 L.Ed. 560 (1896) ("It is now settled that corporations are persons, within the meaning of [the Fourteenth Amendment's protections].").

3. But even within these traditional categorical exceptions, the First Amendment does not permit government to discriminate only against speech that contains some other message of which the government disapproves. *R.A.V.*, 505 U.S. at 385, 112 S.Ct. 2538 ("The proposition that a particular instance of speech can be proscribable on the basis of one feature (e.g., obscenity) but not on the basis of another (e.g., opposition to the city government) is commonplace and has found application in many contexts.").

fusion among courts and litigants, and that confusion is evident in this case. *See Richland Bookmart, Inc. v. Nichols*, 137 F.3d 435, 440 (6th Cir.1998). The Court held that regulation of sexually explicit material would be treated *like* content-neutral time, place, and manner regulations, not that it *was* content-neutral. Thus when courts and litigants fall into the shorthand of simply referring to regulations like the one here as "content-neutral," they can find themselves arguing about irrelevancies. Here, DiMa, with ample citation to cases, argues that the ordinance is not content-neutral, while Hallie argues that it is. DiMa is obviously correct: the ordinance singles out adult-oriented establishments for different treatment based on the content of the materials they sell or display. *Richland Bookmart, Inc.*, 137 F.3d at 438–39. But because that content is sexually explicit materials, DiMa's conclusion that strict scrutiny applies here does not follow. Rather, Hallie's ordinance is constitutional so long as it satisfies the requirements of a reasonable time, place, and manner restriction.

■ Time, place, and manner restrictions are "reasonable," that is, do not violate the First Amendment, if they: (1) are justified without reference to the content of the regulated speech; (2) are narrowly tailored to serve a significant government interest; and (3) leave open ample alternative channels for communication of the information. *Ward*, 491 U.S. at 791, 109 S.Ct. 2746; *see also United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) (stating test with slightly different language). Hallie asserts that the third prong is satisfied because the ordinance permits Pure Pleasure to be open for significant periods of time, about three-quarters of the hours during a week, and DiMa does not challenge this assertion. DiMa also does not contend that the second prong is not satisfied: it neither challenges Hallie's proffered interests as being not significant nor does it claim that it should be required to close for some

fewer number of hours. Our analysis, then, focuses only on the first prong. DiMa levels a number of attacks at the ordinance, arguing that it is not justified as anything other than a regulation of sexually explicit material of which the Hallie city officials disapprove.

■ We can reject DiMa's first argument rather easily. DiMa claims that at least some of the Hallie Township Board members had an improper motive when they voted for the ordinance: rather than acting to combat crime, deter sexually transmitted diseases, and the other "legitimate" goals that the ordinance's preamble asserts, at least some of the Board members voted for the ordinance because of local opposition to the "vice" of sexually explicit materials. The record shows that DiMa is correct. Some members of the Board desired to close down Pure Pleasure altogether because of numerous complaints from Hallie residents who objected to having an adult bookstore in their town. Recognizing that the Constitution did not permit proscribing sexually explicit materials, at least some of the Board members seemed willing to enact the ordinance because it was the most that they could do consistent with the Constitution. But attacking the ordinance because it was enacted by persons with "impure hearts" gets DiMa nowhere. The actual motives of those who enacted the ordinance are irrelevant to our First Amendment analysis. "It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *O'Brien*, 391 U.S. at 383, 88 S.Ct. 1673; *Renton*, 475 U.S. at 47–48, 106 S.Ct. 925 (quoting *O'Brien*). Similarly, in a case applying the First Amendment's free-exercise clause, Justice Scalia, joined by the Chief Justice, rejected the idea that the motives of those who enacted the law were relevant to whether it was constitutional:

[The language of the First Amendment] does not put us into the business of

invalidating laws by reason of the evil motives of their authors. Had the Hialeah City Council set out resolutely to suppress the practices of Santeria, but ineptly adopted ordinances that failed to do so, I do not see how those laws could be said to "prohibi[t] the free exercise" of religion. Nor, in my view, does it matter that a legislature consists entirely of the pure-hearted, if the law it enacts in fact singles out a religious practice for special burdens.

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 558–59, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) (Scalia, J., concurring in part and concurring in the judgment).[4] It would indeed be an exercise in futility if we struck down the ordinance because of the improper motives of some Board members, and the Board was then able to immediately reenact the same ordinance but with the members all being careful to avoid stating their illegitimate motives. *See O'Brien*, 391 U.S. at 384, 88 S.Ct. 1673 (declining to void otherwise constitutional statute "which could be reenacted in its exact form if the same or another legislator made a 'wiser' speech about it."). Thus, in analyzing whether Hallie's ordinance violates the First Amendment, we do not ask whether the motives of the Board can be justified as content-neutral time, place, and manner restrictions, but rather whether the ordinance itself can be so justified. *See Renton*, 475 U.S. at 48, 106 S.Ct. 925.

▮▮▮▮ The justification advanced by Hallie is combating potential undesirable "secondary effects" of adult-oriented establishments. This is a significant government interest. *Renton*, 475 U.S. at 50, 106 S.Ct. 925. Those undesirable secondary effects could include the spread of crime and sexually transmitted diseases, a decline in property value, or an increase in public sexual acts. Although the ordinance's preamble cites numerous second-

ary effects that it was meant to combat, on appeal, as it did in the court below, Hallie focuses on the Board's conclusion that one of the secondary effects of the adult-oriented businesses was increased crime and the ordinance was reasonably necessary to combat it. In response to a First Amendment challenge, the municipality bears the burden of showing that there is evidence that supports its proffered justification. *See J & B Entertainment, Inc. v. City of Jackson*, 152 F.3d 362, 370–71 (5th Cir. 1998) (city bears burden both of production and persuasion). This burden is not overwhelming. "The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *Renton*, 475 U.S. at 51–52, 106 S.Ct. 925. The district court correctly concluded that Hallie's ordinance does not itself contain any evidence to support its proffered justification; its conclusory assertions regarding its goals and its effect are insufficient by themselves to survive a First Amendment challenge because they are not "evidence" as the Court required in *Renton*. The Third Circuit succinctly stated the appropriate burden in this kind of case: "[O]ur First Amendment jurisprudence requires that the [municipality] identify the justifying secondary effects with some particularity, that [it] offer some record support for the existence of those effects and for the Ordinance's amelioration thereof, and that the plaintiffs be afforded some opportunity to offer evidence in support of the allegations of their complaint." *Phillips v. Borough of Keyport*, 107 F.3d 164, 175 (3d Cir.1997) (*en banc*).

▮▮▮▮ We also agree with the district court that a municipality may make a rec-

---

4. Justice Kennedy, who wrote the opinion for the majority, believed that the motives of the city council were relevant, and applied an analysis adopted from cases applying the Fourteenth Amendment's equal protection clause. *Hialeah*, 508 U.S. at 540–42, 113 S.Ct. 2217. But this part of his opinion was joined only by Justice Stevens.

ord for summary judgment or at trial with evidence that it may not have had when it enacted its ordinance. D. Ct. Op. at 11–12. The Court in *Renton* did not address this issue because in that case, the city council had created an extensive record prior to enacting its ordinance. 475 U.S. at 44, 106 S.Ct. 925. The Court's most relevant guidance on this issue comes from *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991). In that case, the Court addressed a First Amendment challenge to enforcing a statute banning public nudity by prohibiting totally nude dancing in establishments providing "adult entertainment." The Chief Justice, writing the plurality opinion but joined only by two other Justices, held that such nude dancing was "expressive conduct within the outer perimeters of the First Amendment, though we view it only as marginally so." *Id.* at 566, 111 S.Ct. 2456. The plurality opinion affirmed the state's enforcement of its public nudity statute as a reasonable time, place, and manner restriction, without analyzing whether the enforcement combated undesirable secondary effects of the nude dancing; the plurality considered moral disapproval of nudity to be a sufficient justification. Justice Scalia concurred in the judgment, but concluded that because the law at issue was a general one regulating conduct not specifically directed at expression, it should not be subject to any level of First Amendment scrutiny. *Id.* at 572, 111 S.Ct. 2456. Justice Souter concurred in the judgment and provided the fifth vote needed to overcome the views of the four dissenting Justices. Justice Souter, like the plurality, affirmed the statute as a reasonable time, place, and manner restriction, but unlike the plurality did so based on the proffered justification of combating the undesirable secondary effects of adult entertainment establishments. *Id.* at 582–83, 111 S.Ct. 2456. Justice Souter's reasoning, then, appears to be the Court's holding because his was the narrowest reasoning supporting the judgment.[5] Justice Souter accepted the state's justification and its evidence, which it proffered during the litigation, although there was no evidence that the state had been motivated by combating secondary effects when it enacted the statute or that it had had any of the evidence before it. *Id.* Moreover, Justice Souter accepted the experiences of other cities *as reported in judicial opinions* as being evidence upon which the legislature could have reasonably relied. *Id.* at 583–86, 111 S.Ct. 2456. The *Renton* Court had similarly accepted the city's reliance on the experience of Seattle, as expressed in the detailed findings of fact summarized by the Washington Supreme Court in a prior case. 475 U.S. at 51–52, 106 S.Ct. 925 (citing *Northend Cinema, Inc. v. Seattle*, 90 Wash.2d 709, 585 P.2d 1153, 1159 (Wash.1978)).

■ Under these standards, we conclude that Hallie has met its burden of making a record to justify its ordinance's limitation on hours of operation, but we agree with the district court that it has only minimally done so. *See* D. Ct. Op. at 10. Hallie relies primarily on the experience of West Allis, Wisconsin, and Hallie's ordinance was essentially copied from the one enacted by West Allis. (West Allis is next to Milwaukee and is thus geographically far removed from Hallie.) Hallie relies on the factual record supporting West Allis's experience as reported in *Tee & Bee, Inc. v. City of West Allis*, 936 F.Supp. 1479 (E.D.Wis.1996), in which the

---

5. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as the position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (internal quotation marks omitted). Three other circuits have also concluded that Justice Souter's concurrence is the Court's holding. *See J & B Entertainment*, 152 F.3d at 370; *Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129, 134 (6th Cir.1994); *International Eateries of America, Inc. v. Broward County*, 941 F.2d 1157, 1161 (11th Cir.1991).

district court upheld West Allis's ordinance against a First Amendment challenge. Before enacting its ordinance, West Allis had done considerable analysis of studies from other cities, which its ordinance specifically cited. 936 F.Supp. at 1483 & 1485 n. 3. We agree with DiMa that it is unusual for Hallie in this court to rely principally on a district court opinion. In *Barnes*, Justice Souter relied on findings reported in Supreme Court decisions and appellate decisions from the circuit in which the municipality was located. 501 U.S. at 584, 111 S.Ct. 2456. Although *Tee & Bee*'s discussion of the evidence relied on by West Allis is some record support justifying Hallie's similar ordinance, it is not compelling evidence.[6] Likewise, although the Hallie corporate counsel examined the First Amendment issue, the record does not reflect that he conducted any extensive analysis of the experiences of other municipalities, as was done in other cases. Cf. *Renton*, 475 U.S. at 44, 106 S.Ct. 925 (describing extensive studies and hearings conducted by Planning Committee); *Tee & Bee*, 936 F.Supp. at 1483 (committee studied issue for 12 months). Thus, we have a fairly meager record to support Hallie's justification of combating crime. But it is enough of a record in this case because DiMa's First Amendment challenge is limited to the ordinance's hours of operation regulation, and we have no reason to believe that this is a significant impairment of Pure Pleasure's business. DiMa has not created a record to show what sort of impact this limitation would have on its business. That is, we don't know how much revenue Pure Pleasure takes in during the hours that are subject to the regulations or whether, when the hours of operation regulation is enforced, these revenues will be lost rather than merely shifted to other hours when Pure Pleasure is open. Nor do we know how Pure Pleasure's profits would be affected, considering that presumably limiting the hours of operation would reduce its operating expenses. So we caution other municipalities not to read our decision today too broadly. We would expect a municipality defending a more substantial set of regulations to create a more substantial record in support of summary judgment. Cf. *Tee & Bee*, 936 F.Supp. at 1486 ("The record is replete with information showing that the City determined it necessary to provide for the licensing and regulation of adult-oriented businesses in order to combat the secondary effects of such facilities in the surrounding community.").

■ We must address one more aspect of DiMa's argument before closing. In the court below, DiMa submitted expert testimony and a study done in Phoenix to show there is no relation between an adult-oriented business' hours of operation and crime. It also proffered various evidence showing that there was in fact no correlation between Pure Pleasure being open 24 hours a day and crime in Hallie. The district court properly rejected this evidence because it merely contradicts other evidence that the Hallie Board could have reasonably relied upon. It is therefore irrelevant to the question of whether there is some evidence that does support the Board's conclusions. DiMa's contradictory evidence would be highly probative if our task were to discover the objective truth about the effect of Pure Pleasure's operating in Hallie. But our task under the First Amendment is far different. The Hallie Board has the job of sorting through the available evidence and making a political judgment about what regulations best serve Hallie's interest. We are not here to judge how well the Board did its job; our task is to determine whether the law it enacted violates the Constitution. It does not.

---

**6.** We do not want our reasoning to be construed as a slight of the district court's opinion in *Tee & Bee*. The court's opinion was thorough and well reasoned. In referring to *Tee & Bee* as not compelling evidence supporting Hallie's ordinance, we mean that as a district court opinion, to this court *Tee & Bee* is persuasive but not binding precedent.

The judgment of the district court is AFFIRMED.