CLAY, Circuit Judge,
with whom Judges DAUGHTREY and COLE join, concurring in part and dissenting in part. I concur in Parts II.D (Disclosure of personal information), II.E (Civil disability), II.F. (Health and safety inspections), and II.G (Vagueness) of the majority opinion. For the reasons that follow, however, I dissent with respect to Parts II.B (Prompt judicial review) and Part II.C (Hours of operation).
I.
RIGHT TO PROMPT JUDICIAL REVIEW OF ADVERSE LICENSING DECISION
Deja Vu argues that Resolution No. GO-22 creates an unlawful prior restraint on its First Amendment right to free speech because it fails to provide for prompt judicial review of an adverse decision by the Union Township Board of Trustees (“Board” or “Township”) to refuse to grant or renew, or to revoke, a permit to operate an adult cabaret. The majority rejects this argument, reasoning that not only does Ohio law provide for the same type of judicial review mechanism that the Supreme Court endorsed in City of Littleton v. Z.J. Gifts D-4, L.L.C., 541 U.S. 774, 124 S.Ct. 2219, 2221, 159 L.Ed.2d 84 (2004), but also that the Resolution provides an additional First Amendment safeguard by requiring the issuance of a temporary permit pending judicial review. The majority’s analysis is fundamentally misguided, however, because Ohio law does not provide any judicial review whatsoever for a substantial number of adverse licensing decisions.
Resolution No. 00-22 § (C) prohibits any person from engaging in, conducting, or carrying on an adult cabaret “without a valid, current permit” issued pursuant to the Resolution’s regulations. Resolution No. 00-22 § (A)(1) defines an “adult caba *799 ret” to mean an establishment “in which persons appear in a state of nudity in the performance of their duties,” and Section (N)(4) prohibits an employee of an adult cabaret, “in the performance of his or her duties,” from touching or fondling certain specified anatomical areas of his or her body or on any other person. The Resolution’s preamble acknowledges that adult cabarets may engage in “activities protected by the First Amendment.” Resolution No. 00-22, Preamble at ¶ E; see also City of Erie v. Pap’s A.M., 529 U.S. 277, 289, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) (holding that nude erotic dancing is constitutionally-protected, even though it “falls only within the outer ambit of the First Amendment’s protection”); Schultz v. City of Cumberland, 228 F.3d 831, 836, 843 (7th Cir.2000) (holding that the term “performances” in a city ordinance that regulated “live performances which are characterized by the exposure of ‘specified anatomical areas’ or ‘specified sexual activities’... undeniably denotes communicative content and applies explicitly to expression, not mere conduct”). Consequently, Union Township’s licensing scheme is a classic “prior restraint” on constitutionally protected expression because the Resolution gives “public officials the power to deny use of a forum in advance of actual expression.” Soidheastem Promotions, Ltd. v. Conrad, 420 U.S. 546, 553, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975).
Any system of prior restraint comes to this Court “bearing a heavy presumption against its constitutional validity.” Id. at 558, 95 S.Ct. 1239 (internal quotation marks and citations omitted). “The presumption against prior restraints is heavier — and the degree of protection broader — than that against limits on expression imposed by criminal penalties.” Id. at 558-59, 95 S.Ct. 1239. Thus, “[t]he settled rule is that a system of prior restraint ‘avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system.’ ” Id. at 559, 95 S.Ct. 1239 (quoting Freedman v. Maryland, 380 U.S. 51, 58, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); other citations omitted). Among those required safeguards is that the censor must assure “a prompt final judicial determination” of the propriety of restraining the expression. Id. at 560, 95 S.Ct. 1239 (following Freedman). The purpose of this safeguard is to provide review of a censorship decision by an independent branch of government, which may be more responsive to constitutionally protected interests in free expression. Id. at 560-61, 95 S.Ct. 1239. Union Township’s Resolution fails to provide this basic constitutional protection.
Under the Resolution, an individual desiring to operate an adult cabaret must file an application with the Board and authorize an investigation into his or her background, “including any criminal record, of the applicant and any person or entity named in the application, including authorization to conduct subsequent investigations to supplement or update the information.” Resolution No 00-22 § (D)(5)(g). Upon receipt of the application, the chief of the Union Township police department conducts the prescribed criminal background check. Id. § (E).
After conducting a public hearing, the Board is required to approve the application for a permit, unless, inter alia, (1) in the past three years, the applicant or any person named in the application has been convicted of a sex offense under Ohio Revised Code Ch. 2907 (prohibiting rape, sexual battery, unlawful sexual contact with a minor, sexual imposition, importuning, voyeurism, and public indecency); (2) in the past five years, the applicant or any person named in the application has been convicted of an offense under Ohio Revised Code § 503.53(C), which prohibits adult cabaret *800 employees from touching, fondling, massaging, or displaying their own or any other person’s genitals, pubic area, buttocks, or (female) breasts; or (3) the applicant has violated the Resolution’s regulations, which, among other things, make it unlawful for an adult cabaret to employ a person under age 18 and prohibits the acts criminalized by Ohio Revised Code § 503.53(C). Resolution No. 00-22 §§ (F)(2)(e)-(g) and (N). The Board may revoke a permit after a public hearing “upon discovery of a violation” of the Resolution’s regulations. Id. § (I).
The Resolution provides that an applicant denied a new. permit or a renewal permit or an individual whose permit is revoked by the Board “may appeal the action of the Board in accordance with chapter 2506 of the Ohio Revised Code.” Resolution No. 00-22 §§ (J)(l)-(2). Similarly, the Ohio Revised Code provides that “[a]ny person adversely affected by an order of the board denying or revoking a permit to operate an adult cabaret may appeal from the order of the board to the court of common pleas. ?. in accordance with Chapter 2506[ ] of the Revised Code.” Ohio Rev. Code ANN. § 503.57. Although Chapter 2506 of the Code authorizes the appeal of a final order, adjudication, or decision of a municipality’s board of trustees, it does not permit the appeal of “any order, adjudication, or decision that is issued preliminary to or as a result of a criminal proceeding.” Ohio Rev. Code § 2506.01.
As explained below, the Resolution is structured so that the Board may refuse to grant new permits, refuse to renew permits, or revoke current permits based not only on a final criminal conviction for a sex offense (e.g., rape, sexual battery, sexual imposition, voyeurism, public indecency, or touching or displaying one’s genitals or buttocks in an adult cabaret), but also on merely the applicant’s pending criminal charges for a sex offense or the fact that the applicant is the subject of a criminal investigation for such an offense. Consequently, many, if not most, of the Board’s decisions to not renew or revoke permits for adult cabarets are likely to be unre-viewable because they are issued “preliminary to or as a result of a criminal proceeding.” Id.
First, new applicants for an adult cabaret permit must submit to a criminal background cheek by the Union Township police, and will be denied a permit if found to have pled guilty to, or been convicted of, an offense proscribed by Ohio Revised Code Ch. 2907 or § 503.53(C). Such application denials are the “result of a criminal proceeding” under the most common-sense interpretation of those words and, therefore, such denials are unreviewable. ohio Rev. Code § 2506.01 (emphasis added). Similarly, current permit holders may have their permits revoked should the Board “discover[ ]” a violation of the Resolution, which includes the aforementioned criminal prohibitions. To the extent the Board revokes a permit as a consequence of a guilty plea or a conviction for one of these offenses, this decision is unreviewable because it is “issued... as a. result of a criminal proceeding.” Ohio Rev. Code § 2506.01 (emphasis added).
Second, a license revocation is unreviewable where the Board, working with the Union Township police department and local prosecutors, discovers or becomes aware of a suspected criminal offense for which a conviction has not yet materialized, such as where the permit holder has been charged with a sex offense or is merely being investigated for such an offense See, e.g., J.A. 114-15 (Affidavit of Union Township Administrator, Kenneth Geis, at ¶ 8) (explaining the Township’s concerns undergirding a prior version of the Resolution, and recounting an incident *801 at an adult cabaret where “a dancer and a patron were charged with prostitution and related offenses” and “[ajnother person was charged with abduction, gross sexual imposition and felonious sexual penetration for actions which occurred inside the cabaret”). The Board’s decision not to issue or to revoke a permit on the ground that the applicant merely has been charged with, or is suspected of, violating the criminal laws against, for example, sexual imposition, voyeurism, public indecency, or touching or displaying genitals, is unreviewable as a decision issued “preliminary to... a criminal proceeding.” Id. (emphasis added). In other words, under the present wording of the Resolution, mere allegations of certain sex offenses may lead to a nonap-pealable permit revocation.
Try as it might, the majority cannot evade the plain language of § 2506.01 which, as shown above, deprives the Ohio courts of jurisdiction over numerous adverse licensing decisions. The majority makes much of the fact that there appears to be no published Ohio authority denying judicial review of a licensing decision that was rendered preliminary to or as a result of a criminal proceeding. Yet, the majority fails to mention that there similarly is no published authority permitting judicial review of such a decision. Thus, the absence of Ohio authority proves nothing.
Moreover, it is the majority, not the dissent, which is “far-reaching” in ignoring the plain language of § 2506.01 and holding, without any citation to Ohio authority, that the Ohio legislature enacted § 2506.01 in order to prevent criminal defendants from circumventing normal appellate procedures by precluding them from seeking interlocutory appeals in the Ohio Court of Common Pleas. Although the majority is correct that we must resort to every reasonable construction in order to save a legislative act from unconstitutionality, the majority’s construction of § 2506.01 is unreasonable because it is divorced from the clear and plain meaning of the statute’s words and relies entirely on an invented legislative intent. Accordingly, the majority has not saved § 2506.01 through an alternative, reasonable construction. It has completely (and inappropriately) rewritten the statute. See Eubanks v. Wilkinson, 937 F.2d 1118, 1122 (6th Cir.1991) (“[T]he general federal rule is that courts do not rewrite statutes to create constitutionality.”)
Because the purpose and structure of the Resolution authorizes the Township to revoke or not to renew an adult cabaret’s license to operate as a result of an impending or final criminal proceeding, it follows that Ohio Revised Code § 2506.01 is simply not applicable and that Resolution No. 00-22 in reality does not provide for any judicial determination of an adverse licensing decision in many cases. For this reason, and because any system of prior restraint comes to this Court “bearing a heavy presumption against its constitutional validity,” Southeastern Promotions, 420 U.S. at 558, 95 S.Ct. 1239 (internal quotation marks and citations omitted), I would hold that Union Township’s licensing scheme amounts to an unconstitutional pri- or restraint on Deja Vu’s protected expression.
II.
HOURS OF OPERATION PROVISION
Under the First Amendment, content-neutral restrictions on expressive conduct, such as regulations of nude dancing or adult theaters for their adverse secondary effects, must be “narrowly tailored to serve a significant governmental interest.” Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984); see also City of Erie, 529 U.S. at 289-96, 120 S.Ct. 1382; City of Renton v. Playtime Theatres, Inc., *802 475 U.S. 41, 48, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). Such restrictions “need not be the least restrictive or least intrusive means” of serving the Township’s legitimate content-neutral interest, but the means chosen cannot be “substantially broader than necessary” to achieve that interest. Ward v. Rock Against Racism, 491 U.S. 781, 798-800, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). By requiring non-alcohol-serving cabarets to close by midnight, but permitting alcohol-serving cabarets to offer nude dancing until 2:30 a.m., the Resolution’s means of regulating the undesirable combination of nude dancing and alcohol consumption is substantially broader than necessary because it unnecessarily forecloses a substantial amount of constitutionally-protected expression.[1] Accordingly, the district court abused its discretion [2] in failing to enjoin the Township’s enforcement of the hours of operation provision.
Although the Township claims that the hours of operation regulation is “an attempt to close adult cabarets before the bars and taverns in the area close to avoid unruly and intoxicated men from entering during the late night hours,” Defs’ Br. at 30, it fails to adequately explain the disparate treatment accorded adult cabarets that have liquor licenses and those that do not. Because both Ohio law and the Resolution allow adult cabarets that serve alcohol to stay open until 2:30 a.m., there is no reason why the Resolution’s greater limitation on the hours of operation of other adult cabarets is necessary to further the Township’s interest in minimizing the secondary effects of sexually oriented businesses. As Deja Vu has pointed out, numerous courts have concluded that sexually oriented businesses that serve alcohol actually present an increased risk of adverse secondary effects. See, e.g., N.Y. State Liquor Auth. v. Bellanca, 452 U.S. 714, 718, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981) (“Common sense indicates that any form of nudity coupled with alcohol in a public place begets undesirable behavior.”). The more restrictive limitation on the hours of operation of adult cabarets that do not serve alcohol is thus unwarranted.
The Township’s purported inability to regulate the hours of alcohol-serving cabarets due to conflicting state liquor laws[3] is irrelevant to the constitutional analysis. If the Township’s true concern is limiting the secondary effects of nude dancing after midnight, then it logically would have required all cabarets to cease nude dancing at midnight, even though the cabarets that serve alcohol legally could remain open later pursuant to their liquor permits (but not offer nude dancing after mid *803 night). Instead, the Resolution addresses the secondary effects illogically, by permitting patrons of alcohol-serving cabarets to increase their level of intoxication after midnight while simultaneously eliminating an alcohol-free option after midnight for people who have consumed liquor at other local bars and taverns. Under the Resolution, patrons of bars and taverns who wish to frequent an adult cabaret after midnight have no choice but to go to a cabaret that not only serves liquor but which already may have a contingent of intoxicated patrons in attendance, thereby exacerbating the purportedly volatile mix of alcohol and erotica. The Township’s willingness to tolerate' — and, indeed, encourage — this far more palpable and obvious risk of negative secondary effects demonstrates the complete mismatch between the Township’s interest in ameliorating negative secondary effects and the means it has chosen to achieve that end.
Contrary to the majority’s miseharaeter-ization, I do not “propose[] as a solution the more speech-restrictive alternative” of requiring all cabarets to cease nude dancing at midnight. Maj. Op. at 12. I only point out the patently ridiculous and irrational manner in which the Township has attempted to address its purported goal of minimizing the secondary effects associated with the combination of nude dancing and alcohol. Because the Township has failed to articulate any logical, let alone empirically supported, basis for requiring non-alcohol-serving cabarets to close several hours earlier than those that serve alcohol, my only “proposal” is that the midnight closing time for non-alcohol-serving cabarets is unconstitutional. The implication of this proposal is that, on this record, non-alcohol-serving cabarets should be permitted to remain open at least as late as their alcohol-serving counterparts. Although the Township can act incrementally to alleviate negative secondary effects, it cannot act arbitrarily, which it has done in this case.
The majority also is misguided in asserting that Union Township has “relied upon research suggesting that the patrons of alcohol-free adult cabarets are often more unruly because these cabarets are frequently patronized later in the evening by customers who have become intoxicated at other establishments.” Maj. Op. at 790 (emphasis added). The Township has cited no such research whatsoever. The only justification that Union Township has proffered on the subject of closing times is contained in the affidavit of Union Township’s administrator, Kenneth Geis. The Geis affidavit states, in relevant part:
The closing time of Midnight was included in an effort to insure the adult cabaret would close before the closing time of the bars and taverns in the area. There was concern that during the hours after Midnight there was a greater chance that intoxicated male patrons would cause a danger to themselves and to the employees of the adult cabarets and would cause increased criminal activity in the surrounding neighborhood.
(J.A. 105, ¶ 12.) The affidavit does not refer to any “research” showing that (a) alcohol-free cabarets are more unruly after midnight and (b) customers who have become intoxicated elsewhere are responsible for this purported increase in unruliness after midnight. Instead, the affidavit references only the speculative “concern” of some unidentified persons that there was “a greater chance” that drunken men would leave local bars after midnight, frequent adult cabarets, and become unruly. The Resolution’s preamble also fails to mention any research in support of these hypotheses.[4]
*804 Although the First Amendment did not require the Township, before enacting the Resolution, to conduct new studies or produce evidence independent of that already generated by other municipalities, it nevertheless had to rely on some “evidence” that was “reasonably believed to be relevant to the problem” that the midnight closing time for non-alcohol-serving cabarets was designed to address. Renton, 475 U.S. at 51-52, 106 S.Ct. 925; accord Weinberg v. City of Chicago, 310 F.3d 1029, 1038 (7th Cir.2002) (“In the context of a First Amendment challenge under the narrowly tailored test, the government has the burden of showing that there is evidence supporting its proffered justification.”) (citing DiMa Corp. v. Town of Hallie, 185 F.3d 823, 829 (7th Cir.1999)). The Township cannot “get away with shoddy data or reasoning.” City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 438, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002). Its “evidence must fairly support the municipality’s rationale for its ordinance.” Id. Here, there is no empirical evidence— let alone, “research” — that rationally supports a substantially earlier closing time for non-alcohol-serving cabarets. Cf. Executive Arts Studio, Inc. v. City of Grand Rapids, 391 F.3d 783, 796-97 (6th Cir.2004) (holding that zoning ordinance for adult book sellers was facially invalid because it was not narrowly tailored; reasoning that “the City has cited no basis, study or third party experience that would lead one to believe that such a broad ordinance is needed to control undesirable blight rather than merely being an attempt to control undesired speech”).
For similar reasons, the Resolution’s hours of operation provision runs afoul of the Equal Protection Clause of the Fourteenth Amendment. It does not bear “a rational relationship to a legitimate state interest.” City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Deja Vu correctly argues that the Township seeks to regulate and possibly prevent operators of adult cabarets that do not serve liquor from engaging in constitutionally protected conduct during certain times, midnight to 2:30 a.m., while arbitrarily excluding operators of adult cabarets that serve liquor from this hours of operation restriction. Such a difference in classification and application of the resolution is irrational, and thus unconstitutional under the Equal Protection Clause, because it fails to advance the Township’s legitimate interests in minimizing the adverse secondary effects of sexually oriented businesses. See id. at 447-48, 105 S.Ct. 3249.
For the foregoing reasons, I would hold that the Resolution’s hours of operation provision violates the First Amendment and Equal Protection Clause of the Fourteenth Amendment.
III.
CONCLUSION
In summary, the Township’s Resolution is unconstitutional because it does not provide for judicial review of a significant *805 number of adverse licensing decisions. As a consequence, it constitutes a prior restraint on freedom of expression as guaranteed under the First Amendment of the United States Constitution. In addition, Deja Yu is entitled to a preliminary injunction as to the Resolution’s hours of operation provision because it violates both the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. For all of the reasons set forth above, I would affirm in part and reverse in part the district court’s order granting a preliminary injunction.

. We review the grant or denial of a preliminary injunction for an abuse of discretion. Allied Sys., Ltd. v. Teamsters Nat’l Auto. Transporters Indus. Negotiating Comm., 179 F.3d 982, 985 (6th Cir.1999) (citation omitted). "An abuse of discretion exists when the district court applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact.” Id. at 985-86 (internal quotation marks and citation omitted). A district court’s findings of fact are reviewed for clear error, and its conclusions of law de novo. Id. (citation omitted).

.See Maj. Op. at 790; Resolution No. 00-22 § M(1) ("Adult cabarets shall close no later than 12:00 Midnight or not later than the closing time required under its permit to sell alcoholic beverages, whichever is later....”).

. The majority correctly notes that Geis’s affidavit documents instances of patrons engaging in criminal activity in an adult cabaret. *804 Maj. Op. at 790-91. The majority fails to mention, however, that the criminal activity took place at an alcohol-serving cabaret and that the consumption of alcohol exacerbated the activity. See J.A. 104-05, at ¶ 8 ("There were numerous liquor law violations associated with the operation of the establishment. ... A police officer attempting to effect an arrest of an intoxicated patron was seriously assaulted. The patron pled guilty to assault, resisting arrest, and DUI.”). Thus, this empirical evidence does not support an earlier closing time for adult cabarets that do not serve alcohol. In addition, because Geis does not indicate the time of day during which this criminal activity took place, this empirical evidence also does not justify a midnight closing time.