**ENTERTAINMENT PRODUCTIONS, INC., a Tennessee Corporation, d/b/a Christie's Cabaret, et al., Plaintiffs,**

v.

**SHELBY COUNTY, et al., Defendants.**

No. 08–2047.

United States District Court,
W.D. Tennessee,
Western Division.

April 23, 2008.

Edward M. Bearman, Gary E. Veazey, Johnson Grusin Kee & Surprise, Rex L. Brasher, Jr., Brown Brasher & Smith, Memphis, TN, J. Michael Murray, Raymond V. Vasvari, Jr., Berkman Gordon Murray & Devan, Cleveland, OH, for Plaintiffs.

Thomas Anthony Pacello, Jr., Robert B. Rolwing, City Attorney's Office, Memphis, TN, for Defendants.

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

BERNICE B. DONALD, District Judge.

Before the Court is Plaintiffs' Motion for Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. At issue in this case is the local adoption of the Tennessee Adult–Oriented Establishment Registration Act ("Act"), Tenn.Code Ann. §§ 7–51–1101 *et seq.*, in Shelby County, Tennessee. Plaintiffs allege that a preliminary injunction should issue for the following reasons: (1) the Act violates the First Amendment to the United States Constitution; (2) the Act is unconstitutionally overbroad on its face; (3) the Act is unconstitutionally vague; and (4) the Act is not applicable within the City of Memphis due to its present ordinances. The Court finds that Plaintiffs have not demonstrated a substantial likelihood of success on the merits of these claims. Additionally, the Court finds that the remaining factors for injunctive relief do not weigh in Plaintiffs' favor. Accordingly, Plaintiffs' Motion for Preliminary Injunction is DENIED.

## I. BACKGROUND

On September 10, 2007, Shelby County adopted the Act in order to provide "a method of regulating sexually-oriented businesses to address their deleterious secondary effects without regard to the content of speech." Shelby County, Tenn., Ord. 344. The Act was adopted following the review of several reports on the effects of such establishments in Shelby County and the City of Memphis. *Id.* Ordinance 344 relied upon the Tennessee legislative findings of "recognized deleterious secondary effects commonly associated with adult-oriented establishments, including but not limited to an increase in crime, the spread of sexually-transmitted diseases, the downgrading of property values, and other public health, safety, and welfare issues." *Id.*; *see also* 2006 Tenn. Pub. Acts, ch. 943. The Act became effective in Shelby County on January 1, 2008 and will be enforced following a one-hundred-twenty day grace period.

Plaintiffs in this action operate, within the City of Memphis and Shelby County, establishments at which "dance performances of a sexually candid nature are pre-

sented for the entertainment of patrons and guests."[1] Pl.'s Mem. of Law in Support of Mot. for Prelim. Injunction, "Pl.'s Mem." at 3. Specifically, Plaintiffs allege that a preliminary injunction should issue for the following reasons: (1) the Act violates the First Amendment because Shelby County relied upon demonstrably "shoddy" evidence to support its enactment; (2) the Act violates the First Amendment because its application will substantially diminish the availability of adult speech in Memphis; (3) the Act's prohibition on exposure of "specified anatomical areas" violates the First Amendment; (4) the Act's no-touching provision violates the First Amendment; (5) the Act's definitions of "adult cabaret" and "adult entertainment" are unconstitutionally overbroad because they include a myriad of non-adult establishments with no connection to the secondary effects of sexually oriented businesses (6) the Act's definitions of "adult cabaret" and "adult entertainment" are unconstitutionally vague; and (7) the Act should not be applicable within the City of Memphis based upon its existing ordinances.

## II. STANDARD OF REVIEW

A preliminary injunction is an extraordinary remedy requiring the party seeking such relief to demonstrate a clear entitlement to the injunction under the given circumstances. *Overstreet v. Lexington–Fayette Urban Cty. Gov't.*, 305 F.3d 566, 573 (6th Cir.2002). The purpose of a preliminary injunction is to preserve the status quo until the district court can hold a trial on the merits. *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir.2004). In determining whether a party is entitled to a preliminary injunc-

tion, the Court must consider the following four factors: (1) whether the movant has demonstrated a substantial likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction will cause substantial harm to others if issued; and (4) whether the public interest is served by issuance of the injunction. *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884 (6th Cir.2000). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Edward Rose*, 384 F.3d at 261. The inquiry into whether the movant has demonstrated a likelihood of success on the merits is often determinative of whether the injunction should issue in cases that substantially implicate First Amendment concerns. *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville*, 274 F.3d 377, 400 (6th Cir.2001). Thus, the Court will focus its analysis on Plaintiffs' likelihood of success on the merits. The Court will then briefly discuss the remaining factors to determine if injunctive relief is appropriate.

## III. ANALYSIS

### A. FIRST AMENDMENT

#### 1. Constitutionality

Initially, the Court will consider whether Plaintiffs have a substantial likelihood of success on their claims that the Act's provisions violate the First Amendment. Specifically, Plaintiffs allege that (1) the evidence relied upon to link adult businesses to adverse secondary effects is "demonstrably shoddy," (2) the Act will virtually eliminate live adult entertainment in Mem-

---

1. For purposes of clarity, the Court notes that it will refer to Plaintiffs' establishments as "sexually oriented businesses" or "adult establishments" throughout this motion. The Court will refrain from using "adult cabaret" or "adult-oriented establishments," except when specifically discussing these specific statutory provisions, as Plaintiffs challenge these terms-of-art as vague and overbroad.

phis, (3) the prohibition on exposing "specified anatomical areas" is unconstitutional, and (4) the no-touching restriction is unconstitutional.

■ It is well-settled that the expressive conduct of erotic dancing lies "within the outer perimeters of the First Amendment, though we view it as only marginally so." *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (plurality opinion). As such, erotic dancing is guaranteed "only the barest minimum of protected expression." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). Even when First Amendment rights are involved, the expression involved in these challenges "is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate." *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 70, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976).

■ Generally, regulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46–47, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). However, content-neutral time, place, and manner restrictions are acceptable under the First Amendment so long as they are "designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *Id.* Although laws restricting sexually oriented "porn-type speech" are content based, *see Richland Bookmart, Inc. v. Nichols*, 137 F.3d 435, 439 (6th Cir.1998), such speech should be "*treated* as if it were content-neutral because ... it is less than fully protected," *id.* (emphasis in original); *see also American Mini Theatres*, 427 U.S. at 70–71, 96 S.Ct. 2440. The Supreme Court's rationale for this distinction is that a court may

seek to regulate the secondary effects of speech rather than the speech itself "without violating the government's paramount obligation of neutrality in its regulation of protected communication." *Renton*, 475 U.S. at 49, 106 S.Ct. 925 (quoting *American Mini Theatres*, 427 U.S. at 70, 96 S.Ct. 2440).

■ In order for a regulation on such adult expression to pass constitutional muster, it must survive the following four-prong test: (1) the law must be passed within the constitutional power of the government; (2) the law must further an important or substantial government interest; (3) the governmental interest must be unrelated to the suppression of free expression; and (4) the incidental restriction on the First Amendment freedoms must be no greater than is essential to the furtherance of that interest. *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

The Court initially notes that the Tennessee Court of Appeals has already meticulously analyzed the Act under each step of the *O'Brien* test. *See American Show Bar Series, Inc. v. Sullivan Cty.*, 30 S.W.3d 324 (Tenn.Ct.App.2000), *perm. app. denied*, (Tenn. Mar. 15, 2000). As to the first prong, the Court found that the "protection of public health, safety, and welfare falls squarely within the constitutional police powers of the local government." *Id.* at 335 (citation omitted). Next, the court found that the second prong of *O'Brien* was satisfied because courts have "consistently found that the prevention of crime and disease" is an important or substantial government interest. *Id.* at 336; *see also DLS, Inc. v. City of Chattanooga*, 107 F.3d 403, 410 (6th Cir.1997). Additionally, the "combating of secondary effects of adult-oriented establishments is an interest that is not directly related to the suppression of protected speech" and thus satisfies the

third prong. *Id.* (citing *Barnes,* 501 U.S. at 585, 111 S.Ct. 2456 ("on its face, the governmental interest in combating prostitution and other criminal activity is not at all related to expression.")). Finally, the Court analyzed each challenged provision of the Act to determine whether it was narrowly tailored to achieve the government's interests. *Id.* With the exception of one provision[2] that has since been repealed, the Court found that the Act complied with the fourth prong of *O'Brien* because the incidental restrictions on First Amendment freedoms were no greater than necessary. *Id.* at 336–341. Because the *American Show Bar* court has already rejected a challenge to the constitutionality of the Act under the *O'Brien* analysis and because the Sixth Circuit has rejected similar challenges[3], the Court will not revisit every element of the test. Instead, the Court will consider the distinct arguments raised by Plaintiffs on the validity of the Act.

### a. Demonstrably "Shoddy" Evidence

First, Plaintiffs allege that the evidence relied upon to link adult businesses to adverse secondary effects is demonstrably "shoddy." *See City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425, 438–39, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002). A claim that the evidence is not sufficient to adopt the Act should be analyzed under the second prong of the *O'Brien* test, which analyzes whether the law was passed in furtherance of an important or substantial government interest. In such a challenge, the government has the initial burden of showing that it relied upon evidence that it "reasonably believed to be relevant" to addressing adverse secondary effects of adult entertainment. *Renton,* 475 U.S. at 51–52, 106 S.Ct. 925. Upon review of the record, the Shelby County ordinance adopting the Act cites numerous studies on the effects of adult entertainment in Memphis and Shelby County. Shelby County, Tenn., Ord. 344. These reports included studies from the Memphis Shelby County Crime Commission, the University of Memphis Center for Community Criminology and Research, the Memphis and Shelby County Division of Planning and Development, the District Attorney General's summary of illegal activity in Shelby County, and the Memphis City Court Clerk's Office report of citations issued at sexually oriented businesses. *Id.* The ordinance further relies upon the Tennessee legislative findings that the Act sought to "address some rec-

---

**2.** Tennessee Code Annotated § 7–51–1113(j) (1998), which was repealed from the Act, required that a sign must be conspicuously displayed on premises that states that entertainers were "[n]ot permitted to demand or collect all or any portion of a fee for entertainment before its completion." *Id.* The trial court in *American Show Bar* struck this provision because the Act never prohibited such fee collection, and the Court of Appeals affirmed the trial court on that issue. 30 S.W.3d at 337–38. This provision is not at issue in the present case.

**3.** Additionally, the Sixth Circuit considered the validity of another sexually-oriented business ordinance under the *O'Brien* test. *Deja Vu,* 274 F.3d 377 (6th Cir.2001). Although this case did not involve the Act presently before the Court, the *Deja Vu* court nonetheless summarily noted that the "stated interests in reducing crime, open sex, and the solicitation of sex are substantial." *Id.* at 392 (citing *Richland Bookmart, Inc.,* 137 F.3d at 440). Next, the Sixth Circuit noted that "regulations aimed at redressing the secondary effects of the sex industry are unrelated to the suppression of erotic speech." *Id.* (citing *East Brooks Books, Inc. v. City of Memphis,* 48 F.3d 220, 226 (6th Cir.1995)). Thus, the court found that the first three prongs of the *O'Brien* standard were undoubtedly present. *Id.* Accordingly, the Sixth Circuit only analyzed whether the challenged provisions of the ordinance were narrowly tailored under the fourth prong of *O'Brien.*

ognized deleterious secondary effects commonly associated with adult-oriented establishments, including but not limited to an increase in crime, the spread of sexually transmitted diseases, the downgrading of property values, and other public health, safety, and welfare issues." *Id.*; *see also* 2006 Tenn. Pub. Acts, ch. 943.

In light of the ordinance's lengthy and specific discussion of the studies relied upon to adopt the Act, the Court finds that Plaintiffs are not likely to succeed on this challenge. Additionally, the Sixth Circuit has already determined that a legislative body "need not await localized proof of those effects" to enact restrictions on adult entertainment. *DLS*, 107 F.3d at 411 (quoting *Barnes*, 501 U.S. at 582–84, 111 S.Ct. 2456 (concurring opinion)). As such, the record suggests that Shelby County exceeded the general requirements in enacting its ordinance. Thus, the Court finds that Shelby County is virtually certain to establish at the trial on the merits that it relied upon evidence it reasonably believed to be relevant when enacting the ordinance.

Once the government meets its initial burden, the challenger of a law may assert that the evidence relied upon by the government is "shoddy" or may produce evidence of its own tending to refute the proposition that sexually oriented businesses are connected to adverse effects. *Alameda Books*, 535 U.S. at 438–39, 122 S.Ct. 1728. Although Plaintiffs promise that they will demonstrate the inadequacies of the evidence relied upon in adopting the Act and will point to additional evidence to disprove any connection between sexually oriented establishments and adverse secondary effects, they have not provided any such evidence at this time. Thus, because the Act has already been held to be within the legitimate scope of governmental restriction and to further an

important or substantial government interest, *see American Show Bar*, 30 S.W.3d at 335–36, the Court finds that Plaintiffs do not have a substantial likelihood of success on the merits on this issue.

### b. Economic Effects

Next, Plaintiffs claim that the Act will virtually eliminate all sexually oriented speech within the City of Memphis. Plaintiffs base these assumptions on the declarations of Steven Cooper and Charles Gerald Westlund, the principals of Plaintiffs' corporations, who assert that the Act's provisions would have a strongly negative impact upon their businesses. Cooper Decl. ¶¶ 10–17; Westlund Decl. ¶¶ 9–15. Plaintiffs further allege that they operate a "substantial fraction" of all sexually oriented businesses in the City of Memphis, Pl.'s Memo at 34, and that there are no erotic dance clubs now operating in Shelby County other than those within the City of Memphis. Cooper Decl. ¶ 17. Accordingly, Plaintiffs contend that their prediction of the decline in adult-oriented speech if the Act were adopted is based upon "substantial experience in the adult entertainment industry, both in Memphis and elsewhere." Pl.'s Mem. at 34.

In *DLS*, the Sixth Circuit considered the economic impact of speech regulations within the fourth prong of the *O'Brien* test, which considers whether the ordinance is narrowly tailored. 107 F.3d 403, 413 (6th Cir.1997). Relying upon the Supreme Court's decision in *Renton*, the Court found that "[t]he inquiry for First Amendment purposes is not concerned with economic impact. In our view, the First Amendment requires only that [the legislative body] refrain from effectively denying ... a reasonable opportunity to open and operate" a sexually oriented business. *Id.* (quoting 475 U.S. at 54, 106 S.Ct. 925). The *DLS* court then noted

that it would consider "economic effects of the ordinance in the aggregate, not at the individual level." *Id.* If the ordinance were *"intended* to destroy the market for adult cabarets, it might run afoul of the First Amendment, but not if it merely has adverse effects" on the individual establishment. *Id.* (emphasis added).

■ In the present case, the Court notes that *Renton* requires only that the government provide a reasonable opportunity to open and operate a sexually oriented establishment. 475 U.S. at 54, 106 S.Ct. 925. Nothing in the Act suggests that Plaintiffs' right to operate such a business would be foreclosed. First, Plaintiffs allege that the prohibition on serving or consuming alcohol on premises may create financially adverse consequences. *See* Cooper Decl. ¶ 10–11, 13; Westlund Decl. ¶ 12. The Supreme Court, however, has held that there is no constitutional right to offer both alcohol and adult-oriented entertainment. *See California v. LaRue,* 409 U.S. 109, 118, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); *see also American Show Bar,* 30 S.W.3d at 337 (finding that the Act's prohibition on serving or consuming alcohol at adult-oriented establishments was not constitutionally infirm). Likewise, the prohibition against serving or consuming alcohol does not restrict the type of expression that is permitted but merely restricts the circumstances in which it may be presented. This is well within the government's power to minimize the adverse deleterious effects of adult establishments. *Renton,* 475 U.S. at 49, 106 S.Ct. 925; *American Mini Theatres,* 427 U.S. at 70, 96 S.Ct. 2440.

■ Next, Plaintiffs allege that the provision requiring a six-foot distance between performing entertainers and other entertainers, employees or customers would have a negative financial impact upon business. Cooper Decl. ¶ 14; West-

lund Decl. ¶ 13. The provision specifically states that all performances should be at least six feet from the nearest entertainer, employee, or customer. Tenn.Code Ann. § 7–51–1114(c). Although Plaintiffs may not desire this regulation, "there is nothing in constitutional jurisprudence to suggest that patrons are entitled under the First Amendment to the maximum erotic experience possible." *American Show Bar,* 30 S.W.3d at 340. With this reasoning, the Tennessee Court of Appeals has found no constitutional infirmity in the six-foot buffer zone required by the Act. *Id.* at 338. Additionally, numerous courts have found similar buffer-zone regulations in sexually oriented businesses to be constitutionally permissible. *Id.* (citing cases in accord); *see DLS,* 107 F.3d at 408–13 (citing cases in accord). Thus, buffer zone restrictions between performing entertainers and other entertainers, employees, and customers are not considered to be prohibitions on opening or operating a sexually oriented business. Notwithstanding, a six-foot buffer zone between employees raises questions regarding constitutionality.

■ Finally, Plaintiffs mention generally that the other provisions of the Act will economically harm their businesses. Although Plaintiffs do not specifically mention the possible financial impact of the provisions regarding the degree of nudity allowed under the Act, the Court will address this as it is undoubtedly a central aspect of Plaintiffs' establishments. The United States Supreme Court has concluded that prohibitions on nude or topless dancing do not violate the First Amendment. *Barnes,* 501 U.S. at 571, 111 S.Ct. 2456. Specifically, the *Barnes* court found that "the requirement that the dancers don pasties and G-strings does not deprive the dance of whatever erotic message it conveys; it simply makes the message slightly less graphic." *Id.* As such, regula-

tions on the degree of nudity are not treated as prohibitions on opening or operating a sexually oriented business.

■■■ As a final consideration of whether the potential economic impact of sexually oriented businesses may violate the First Amendment, the Court will consider whether the Act "intended to destroy the market for adult cabarets." *DLS,* 107 F.3d at 413. What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. *Aeroquip–Vickers, Inc. v. C.I.R.,* 347 F.3d 173, 192 n. 11 (6th Cir.2003). In this case, Ordinance 344, as enacted by the Shelby County Board of Commissioners, contains lengthy references to the adverse effects sought to be remedied by the adoption of the Act. Thus, it is clear that the purpose of the Act is to minimize the deleterious secondary effects of sexually oriented businesses rather than to reduce sexually oriented speech. As already discussed, such regulations are generally constitutionally permissible. Accordingly, Plaintiffs have not demonstrated a substantial likelihood of success on the merits.

### c. *"Specified Anatomical Areas"*

Next, Plaintiffs claim that the Act's prohibitions on exposing "specified anatomical areas" is unconstitutional under the First Amendment. *See* Tenn.Code Ann. § 7–51–1102(24). The Tennessee Court of Appeals has considered this provision and has determined that it is neither unconstitutionally vague nor overbroad. *American Show Bar,* 30 S.W.3d at 339–40. Further, it is well-established that bans on total or partial nudity are constitutional when the government seeks to regulate the deleterious adverse effects of sexually oriented establishments. *Barnes,* 501 U.S. at 570, 111 S.Ct. 2456. As previously noted, such regulations do not "deprive the dance of whatever erotic message it conveys; it

simply makes the message slightly less graphic." *Id.* As such, statutes regulating the degree of nudity in order to prevent adverse secondary effects generally fail the third prong of the *O'Brien* test because the government interest is unrelated to the suppression of free expression. *Id.* Based on the foregoing, Plaintiffs have not demonstrated a substantial likelihood of success on this prong.

### d. *"No–Touching" Provisions*

Finally, Plaintiffs claim that the Act's no-touching provisions are unconstitutional. The Tennessee Court of Appeals has previously rejected this exact challenge to the Act. *See American Show Bar,* 30 S.W.3d at 338–39. In doing so, the Court relied upon the Fifth Circuit's analysis in *Hang On, Inc. v. City of Arlington,* 65 F.3d 1248, 1253 (5th Cir.1995), in which the court rejected an overbreadth challenge and found that such contact is beyond the "expressive scope of dancing itself" and is not protected by the First Amendment. *Id.* at 1253. Although Plaintiffs in this case argue that contact between dancers is part of the erotic expression and should be protected, the Court notes that, even so, there is nothing in constitutional jurisprudence to suggest that patrons are entitled, under the First Amendment, to the maximum erotic experience possible. *American Show Bar,* 30 S.W.3d at 340. Because the six-foot "buffer zone" between has routinely been upheld, *Id.* at 338 (citing cases in accord); *DLS,* 107 F.3d at 408–13 (citing cases in accord), Plaintiffs' challenge to the constitutionality of the no-touching provision is unlikely to succeed on the merits.

### 2. *Overbreadth*

■■■ Next, the Court will consider Plaintiffs' challenge that the Act is uncon-

stitutionally overbroad.[4] Specifically, Plaintiffs assert that "adult entertainment" and "adult cabaret" are defined in an imprecise manner that threatens to restrain the speech of a myriad of non-adult establishments with no conceivable connection to the adverse secondary effects of sexually oriented businesses. Pl.'s Mem. at 24; *see* Tenn.Code Ann. §§ 7–51–1101(2)–(3). As such, Plaintiffs contend that a wide range of artistic expression may be impermissibly squelched by the adoption of the Act. *Id.* at 24–36.

The purpose of the overbreadth doctrine is "to prevent the chilling of protected expression." *Staley v. Jones,* 239 F.3d 769, 779 (6th Cir.2001). To declare an act as facially overbroad is an "extraordinary" remedy under the First Amendment. *Odle v. Decatur Cty.,* 421 F.3d 386, 393 (6th Cir.2005). A district court is required to "proceed with caution and restraint, as invalidation may result in unnecessary interference with a state regulatory program." *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 216, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975) Accordingly, the invalidation of an act on overbreadth grounds is "strong medicine" that should be applied "sparingly and only as a last resort." *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

Generally, an act is facially overbroad under the First Amendment if it "reaches a *substantial* number of impermissible applications relative to the law's legitimate sweep." *Deja Vu,* 274 F.3d at 387 (quoting *New York v. Ferber,* 458 U.S. 747, 771, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)) (emphasis added). "Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute." *Broadrick,* 413 U.S. at 613, 93 S.Ct. 2908 (citing cases in accord); *see also Davis–Kidd Booksellers, Inc. v. McWherter,* 866 S.W.2d 520, 526 (Tenn.1993). The critical analysis in determining whether an act is facially overbroad is whether it is "readily susceptible" to a limiting construction. *Virginia v. American Booksellers Ass'n,* 484 U.S. 383, 397, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988); *Erznoznik,* 422 U.S. at 214–16, 95 S.Ct. 2268; *Broadrick,* 413 U.S. at 613, 93 S.Ct. 2908. To meet this requirement, the statutory text must contain an express exemption or other specific language limiting its application. *Odle,* 421 F.3d at 396 (quoting *Schultz v. City of Cumberland,* 228 F.3d 831, 849–50 (7th Cir.2000)). The rationale for examining the text of the statute is that the constitutionality should "depend more on the language the drafters employed than on the *post hoc* representations of the local officials charged with enforcing the ordinance." *Odle,* 421 F.3d at 397.

In the present case, Plaintiffs challenge two definitions used in the Act to specify the types of businesses and activities that fall within its purview. First, the Act's definition of "adult cabaret" states that it is an "establishment that features *as a principal use of its business,* entertainers, waiters, or bartenders who expose to public view of the patrons within such estab-

---

4. Plaintiffs need not establish the traditional requirement of standing to challenge that a statute is constitutionally overbroad on First Amendment grounds. *Odle v. Decatur Cty.,* 421 F.3d 386, 393 (6th Cir.2005). Otherwise stated, a plaintiff may assert the interests of others not before the court even if it is only their protected expression, not the plaintiff's, that the challenged ordinance is said to infringe. *Id.* (citing *Board of Airport Comm'rs v. Jews for Jesus, Inc.,* 482 U.S. 569, 574, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987); *Members of City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 801, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)).

lishment, at any time, the bare female breast below a point immediately above the areola, human genitals, pubic region, or buttocks...."[5] Tenn.Code Ann. § 7–51–1102(2) (emphasis added). Likewise, the definition of "adult entertainment" means a "live performance, display or dance of any type, that has a *principal or predominant theme, emphasis, or portion* of such performance, any actual or simulated performance of specified sexual activities or exhibition or viewing of specified anatomical areas...." Tenn.Code Ann. § 7–51–1102(3) (emphasis added). In light of these express textual provisions, the Court will determine whether Plaintiffs have a substantial likelihood of success on the facial overbreadth challenge.

In a case relied upon by the Sixth Circuit in its discussion of overbreadth, *see Odle,* 421 F.3d at 396–97, the Seventh Circuit had the opportunity to consider a virtually identical limiting provision, which defined an adult cabaret as an establishment that *"regularly features ... persons who appear in a state of nudity or seminude."* *Schultz,* 228 F.3d at 849 (emphasis added). Although the plaintiffs argued that this definition would "cover venues that present theatrical and artistic performances which feature nudity or sexual content, but also contain serious artistic, social or political value[,]" *id.* at 849, the court concluded that "a facial overbreadth challenge fails when the regulation's plain language is readily susceptible to a nar-

rowing construction that would make it constitutional[,]" *id.* at 850 (citing *American Booksellers,* 484 U.S. at 397, 108 S.Ct. 636). The *Schultz* court found that the term "'regularly features' can be interpreted to mean 'always features.' Under this definition, a venue falls within the definitions ... only if it features nudity, semi-nudity or specified sexual content as the permanent focus of its business and gives special prominence to such content on a permanent basis." *Id.* at 850. The *Schultz* court continued to make the following observations regarding the balancing of legitimate government interests with the likelihood of suppression of protected speech:

> [A narrowing] construction limits the Ordinance to adult-entertainment establishments, which always feature nudity, semi-nudity and specified sexual content, and excludes theatrical venues that present shows ... for long stretches but not on a permanent basis. It is conceivable, though unlikely, that a theater might make the presentation of artistic performances featuring nudity its abiding focus. But even so, the Ordinance's unconstitutional applications would not be real and substantial in relation to its plainly legitimate sweep.... In a facial challenge like this one, there must be a realistic danger that the Ordinance will significantly compromise the First Amendment rights of parties not before the Court. *The plaintiffs suggest sce-*

---

5. Plaintiffs further claim that the phrase "as a principal use of its business" only modifies the first sentence of the "adult cabaret" definition but does not modify the successive sentence, which states as follows: " 'Adult cabaret' includes a commercial establishment that features entertainment of an erotic nature, including exotic dancers, strippers, male or female impersonators, or similar entertainers." Tenn.Code. Ann. § 7–51–1102(2). Thus, Plaintiffs claim that the second sentence of this definition is overbroad because it is not

limited. The Court does not find this argument to be persuasive. Because the second sentence of the definition states that it is merely elaborating upon what the first sentence "includes," *id.,* these examples fall under the general definition provided in the first sentence, which is limited by the acts that are "a principal use of its business." Therefore, the Court concludes that Plaintiffs have no reasonable likelihood of success on this overbreadth claim.

*narios to which the Ordinance might apply on its face and would unconstitutionally restrict protected expression, but the Ordinance is readily susceptible to a narrowing construction that saves the potentially unconstitutional applications from dwarfing the Ordinance's legitimate reach.*

*Schultz,* 228 F.3d at 850–51 (footnotes and citations omitted) (emphasis added).

■ In light of *Schultz,* the Court finds the limiting language in the Act to be persuasive. The Act states that exposure of specified anatomical areas or the presentation of specified sexual activities must be the "principal use" of the business or the "principal or predominant theme" of the entertainment. *See* Tenn.Code Ann. § 7–51–1102(2)–(3). In considering the definitions of these terms, "principal" must be the "most important, consequential, or influential" element of the establishment. *Webster's Third New International Dictionary* 1802 (3d ed. 1993). The term "predominant" requires that the emphasis, theme, or portion have "superior strength, influence, authority or position." *Id.* at 1786. In comparison, the *Schultz* court found the phrase "regularly features" to be sufficient, and "regularly" merely requires that the conduct be "recurring" or be at "stated, fixed, or uniform intervals." *Id.* at 1913. Thus, the language in the Act requiring certain entertainment be a central use limits the construction of the Act as much as, if not more so, than the *Schultz* language. Following the *Schultz* rationale that the Act's narrowing language is sufficient to confine the statute to those businesses that permanently feature sexually oriented entertainment and give "special prominence" to this type of entertainment, the Court concludes that Plaintiffs do not have a substantial likelihood of success on their claim that the Act is facially overbroad.

Before concluding the analysis of this issue, it is important to discuss the critical distinction between the instant case and the cases cited by Plaintiffs in which the Sixth Circuit and other courts have found various statutes and ordinances constitutionally overbroad. In those cases, the law at issue was what the Sixth Circuit generally referred to as a " 'public place' ordinance." *Odle,* 421 F.3d at 395. Those ordinances were directed at virtually any nudity or simulated sexual activity at any public place. For example, in *Odle,* the county ordinance prohibited nudity "at a wide range of public places where alcohol is sold, served, or consumed." *Id.* at 388. The Sixth Circuit noted that this definition was "effectively all-encompassing, exempting only restrooms, showers, medical facilities" and certain other specific venues. *Id.* at 392. In addition, the language of the law at issue in *Odle* was not readily susceptible to any limiting construction. *Id.* at 399. Likewise, in *Triplett Grille v. City of Akron,* the ordinance proscribed enumerated sexual conduct at any public place, regardless of whether intoxicating liquors were sold, served, or consumed. 40 F.3d 129, 131 n. 2 (6th Cir.1994). The *Triplett Grille* court concluded that the ordinance was unconstitutionally overbroad because the city did not "demonstrate a link between nudity in non-adult entertainment and secondary effects," and because the ordinance did not contain limiting provisions to apply it only in contexts where harmful secondary effects were likely to exist. *Id.* at 135. Thus, the Sixth Circuit found overbreadth where the laws were written to cover all public places and in the absence of limiting provisions narrowing the construction of the laws. The case presently before the Court is not in that category.

Likewise, Plaintiffs rely upon *Giovani Carandola, Ltd. v. Bason,* 303 F.3d 507

(4th Cir.2002), and *Conchatta, Inc. v. Miller,* 458 F.3d 258 (3d Cir.2006), for the proposition that the Act is overbroad. In *Carandola,* the court considered an overbreadth challenge to a state statute prohibiting any "conduct or entertainment by any person who is wearing transparent clothing that reveals private parts," any "entertainment that includes or simulates sexual intercourse or any other sexual act," and other simulated sexual activity. 303 F.3d at 510. The *Carandola* court relied upon the state's admission that "only a 'small percentage' " of those covered by this statute "present the kind of adult entertainment that legitimately concerns the state. Among the 'vast majority' of permittees that do not are coliseums, theaters, hotels, and restaurants." *Id.* at 517. Thus, the *Carandola* statute is akin to the general "public place ordinance" at issue in *Odle* and *Triplett Grille. Odle,* 421 F.3d at 395. *Triplett Grille,* 40 F.3d at 135. Likewise, in *Conchatta,* the court considered an overbreadth challenge to a state liquor code provision that prohibited "lewd, immoral or improper entertainment" at any place holding a liquor license. 458 F.3d at 261. Again, the parties agreed that the statute sought to regulate many "ordinary restaurants, . . . dinner theaters, comedy clubs, and other venues" and even extends "to performance spaces that serve alcohol in the lobby during intermission." *Id.* at 266. Because the court found that the text of the code was not readily susceptible to a limiting construction, the court concluded that this statute was overbroad. *Id.* at 262–68. The Court finds that the present case is distinguishable from *Odle, Triplett Grille, Carandola,* and *Conchatta* because none of these statutes had any express limiting provisions in the text of the statute.

Because the Act at issue in this case expressly contains a limiting provision to those establishments with sexually orient-ed expression as a "principal use" of the business or "principal or predominant theme" of the entertainment, these cases are not persuasive. Furthermore, the Court notes that the United States District Court for the Middle District of Tennessee has also reached this same conclusion, finding that neither "adult entertainment" nor "adult cabaret" as defined in the Act is unconstitutionally overbroad. *See Angele Kaye Belew v. Giles Cty.,* No. 1–01–0139, slip op. at 64–68, 2005 WL 2802871 (M.D.Tenn.2005). The *Belew* court similarly held that the express limiting language in the text of the statute is sufficient to survive an overbreadth challenge. *Id.* Because the Act at issue has appropriate limiting language, the Court finds that Plaintiffs have not demonstrated a substantial likelihood of success on their claim that the Act is facially overbroad.

### 3. Vagueness

Next, the Court will consider whether Plaintiffs have a substantial likelihood of success on their claim that the Act is unconstitutionally vague. Specifically, Plaintiffs contend that the terms "adult cabaret" and "adult entertainment" as defined in the Act do not allow them to ascertain what entertainment is permissible. Pl.'s Mem. at 26; *see* Tenn.Code Ann. §§ 7–51–1102(2), (3).

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Vague laws are problematic because they may trap the innocent by not providing fair warning, may fail to provide explicit standards for those who apply to them, or may abut upon sensitive areas of basic First Amendment freedoms and operate to inhibit the exer-

cise of such speech. *Id.* at 108–09, 92 S.Ct. 2294. Therefore, a law must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id.* at 108, 92 S.Ct. 2294. In the context of First Amendment cases, the Supreme Court has imposed a more stringent rule which requires that statutes that impinge on the area of freedom of expression must have a greater degree of specificity than in other contexts, so as to insure that citizens will not be chilled from exercising their constitutional right to free expression. *Smith v. Goguen,* 415 U.S. 566, 573, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974).

Despite these general principles, courts have repeatedly noted the practical confines of expressing prohibited conduct through statutory language. In *Grayned,* the Supreme Court noted that because legislative bodies are "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." 408 U.S. at 110, 92 S.Ct. 2294. Additionally, the Supreme Court has noted that "there are limitations in the English language with respect to being both specific and manageably brief," and therefore a statute is not unconstitutionally vague if it is "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest." *U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers,* 413 U.S. 548, 578–79, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973).

In its consideration of virtually the same issue, the Sixth Circuit has rejected a challenge by an adult bookstore that argued the Act was impermissibly vague. *See*

*Richland Bookmart,* 137 F.3d at 441. The "adult bookstore" definition states that certain sexually oriented materials, devices, or paraphernalia must be the *"principal or predominant* stock or trade" of the business. *Id.* (emphasis added); *see also* Tenn.Code Ann. § 7–51–1101(1). Although the plaintiff, an adult-bookstore operator, claimed that the Act was unconstitutionally vague, the Sixth Circuit refused to accept this interpretation. Specifically, the court found that the plaintiff's establishment "clearly falls within the purview of the statute." *Richland Bookmart,* 137 F.3d at 441. The court noted that, under Supreme Court authority, it was "unnecessary to consider vagueness when an otherwise valid ordinance undisputedly applies to the plaintiff—when there is no vagueness as to him." *Id.* (citing *American Mini Theatres,* 427 U.S. at 58–59, 96 S.Ct. 2440; *Renton,* 475 U.S. at 55 n. 4, 106 S.Ct. 925).

■ Additionally, the United States District Court for the Middle District of Tennessee has recently rejected a vagueness challenge to the definitions of "adult cabaret" and "adult establishment" under the Act. *Belew,* No. 1–01–0139, at 64–68. The *Belew* court found that the phrases used in the Act are "commonly understood" and that the narrowing construction "specifically limits" the definitions to those in which certain enumerated sexual content is the "principal use" or "principal or predominant theme, emphasis, or portion." *Id.*; Tenn.Code Ann. §§ 7–51–1101(2), (3).[6] This Court is mindful that a decision from another district court has no precedential value and is not binding on this court.

---

**6.** The *Belew* court further addressed the phrase "or any other personal service offered customers" in the definition of "adult entertainment" and found that it was not unconstitutionally vague. *Belew,* No. 1–01–0139, at 66. The *Belew* court stated that the phrase

must be "read in context with the entire definition," *id.,* which requires that the activity have a certain "principal or predominant theme, emphasis," Tenn.Code Ann. § 7–51–1101(3).

Nonetheless, this Court finds the reasoning in *Belew* persuasive. In light of *Richland Bookmart* and the reasoning in *Belew,* this Court finds that Plaintiffs, who concede to operating erotic dance clubs within Shelby County, do not have a likelihood of success on the merits as to this issue.

## B. CITY OF MEMPHIS ORDINANCES

Next, the Court must determine whether any City of Memphis ordinances would prevent the application of the Act to Plaintiffs as operators of adult entertainment establishments within the City of Memphis. Under the Act, "if a city . . . chooses to *enact and enforce its own regulatory scheme for adult-oriented establishments and sexually-oriented businesses,* then the provisions of this part shall not apply within the jurisdiction of such city or other political subdivision." Tenn.Code Ann. § 7–51–1121(b) (emphasis added). Based upon the record before the Court, at least three city ordinances exist that have bearing upon this determination. *See* Memphis, Tenn.Code § 6–72 (sexually oriented businesses); *id.* § 7–08 (beer permits); *id.* § 6–20 (dance hall permits). Despite these ordinances, the Administrator of the City of Memphis Permits Office affirmed that the "City of Memphis currently has no licensing system specifically for operating or being employed at an adult business." Higgens Aff. ¶ 5. Accordingly, the Court will consider the substance of each ordinance to determine whether it would prevent the application of the Act within the City of Memphis.

### 1. *Sexually–Oriented Businesses Ordinance*

■ The Court begins its analysis with the City's ordinance on sexually oriented businesses. *See* Memphis, Tenn.Code § 6–72. At first glance, this ordinance would appear to be exactly the type of regulatory scheme that would prevent application of the Act in the City. Yet the history and enforcement of this statute significantly complicates the analysis.

In 1995, the constitutionality of Section 6–72, also referred to as Ordinance 4013, was challenged before the United States Courts of Appeals for the Sixth Circuit. *See East Brooks Books,* 48 F.3d 220. The Sixth Circuit concluded that various portions of Section 6–72 were invalid. *Id.* at 226–28. On October 21, 1996, this Court entered a Consent Final Judgment adopting the Court of Appeals' decision as the final ruling and judgment in these consolidated cases. As a result, Section 6–72 *"has never been enforced"* in the City of Memphis and "[n]one of the Plaintiffs in the case at hand have *ever* applied for a permit" under its provisions. Higgens Aff. ¶¶ 3–4 (emphasis added).

■ In light of evidence in the record that the ordinance has never been enforced, the Court must determine whether the Shelby County ordinance adopting the Act is now applicable in the City of Memphis. It is well-settled that, when interpreting a statute, this Court is to use the ordinary and natural meaning of the language. *The Limited, Inc. v. C.I.R.,* 286 F.3d 324, 332 (6th Cir.2002) (citations omitted). Under the provisions of the Act, a city must enact *and enforce* its own regulatory scheme for adult-oriented establishments and sexually oriented businesses in order to prevent a county ordinance from being applicable within the city. Tenn. Code Ann. § 7–51–1121(b). In light of the proof in the record that Section 6–72 has never been enforced within the City of Memphis, Plaintiffs have not demonstrated a substantial likelihood of success on the merits as to non-applicability to the City of Memphis.

## 2. Beer Ordinance

■ Next, the Court must examine whether the City's beer ordinance, *see* Memphis, Tenn.Code § 7–08, prevents the application of the Act. This ordinance generally provides for "Licenses to Store, Sell, Distribute, or Manufacture" alcohol. *Id.* Under Article 2, the ordinance does discuss "prohibited sexual or pornographic conduct" at establishments that distribute alcohol in accordance with the ordinance. *See id.* § 7–08–090. The ordinance prohibits employees, hosts, or other persons from exposing certain anatomical areas, *see id.* § 7–08–090(B), and further prohibits various sexual activities from occurring on premises, *see id.* §§ (C) & (D).

Again, the Court must use the ordinary meaning of a statute's terms to determine the proper construction of the provisions. The Act, as adopted by Shelby County, states that a city must enact and enforce its own regulatory scheme for *adult-oriented establishments and sexually-oriented businesses* in order to avoid the applicability of a county ordinance. This City beer ordinance is not exclusively directed at adult-oriented establishments or sexually oriented businesses. Instead, this ordinance applies to all venues in the City that serve alcohol. Because the ordinance covers the distribution of alcohol at any number of businesses, including restaurants, bars, theaters, sporting venues, and night clubs, it cannot be said that it is a regulatory scheme for adult-oriented establishments and sexually oriented businesses. On the contrary, it is an ordinance for the distribution of alcohol regardless of the setting in which the alcohol is served. As Shelby County notes, merely because adult-oriented establishments may happen to violate the ordinance more often than other establishments does not mean that the ordinance is solely directed at their type of business. If such were the case, a general requirement that any business ob-

tain a general license or permit from the City of Memphis could be considered a regulatory scheme for adult-oriented establishments and sexually oriented businesses. The Court does not find that such laws that regulate a vast number of businesses, including adult establishments, are sufficient to prevent the application of the Act. Accordingly, Plaintiffs have not demonstrated a substantial likelihood of success on the merits on this issue.

■ With respect to the City of Memphis beer ordinance, Plaintiffs raise another related issue that the Court will briefly address. Specifically, Plaintiffs allege that the Act impermissibly restricts the right of the Memphis Beer Board to license and permit the sale of beer. Under Tennessee law, the right of a citizen to have a beer permit is based solely upon state statutes. *Young v. Warren Cty. Beer Bd.,* 195 Tenn. 211, 258 S.W.2d 763, 764 (1953). Furthermore, in a case challenging the validity of the Act, the Tennessee Supreme Court held that "regulation of entertainment provided in establishments licensed to sell alcohol is within the authority of the State." *Price v. State,* 806 S.W.2d 179, 181 (Tenn.1991). As the Act is Shelby County's local adoption of a state statute, the Court finds that Plaintiffs have not demonstrated a substantial likelihood of success on the merits as to their claim that the Act impermissibly usurps alcohol licensing authority from the City of Memphis.

## 3. Dance Hall Permits

■ Finally, the Court must consider whether the city ordinance regarding dance hall permits is a regulatory scheme for adult-oriented establishments or sexually oriented businesses. *See* Memphis, Tenn.Code § 6–20. This ordinance governs any business or person who "conducts, manages, maintains or controls, either directly or indirectly any ... dance to which the public generally gains admis-

sion...." *Id.* § 6–20–1. Thus, this ordinance also governs a variety of nightclubs and other venues. As an example, Coyote Ugly, a traditional bar, has a dance hall permit for its operation despite not presenting exotic dancing or nudity. Higgens Aff. ¶ 7. Additionally, the Court can envision a wide variety of dance clubs and bars that may fall within the ambit of the dance hall ordinance and yet have no relation to adult-oriented establishments or sexually oriented businesses.

Once again, the language of the Act clearly states a county's ordinance should apply absent a city's enactment and enforcement of a regulatory scheme for adult-oriented establishments or sexually oriented businesses. It is certainly true that the City of Memphis has various ordinances that do generally apply to these establishments along with a variety of other businesses. However, the Court finds that these general provisions are not the type of regulations that prevent the application of the Act.

Accordingly, the Court finds that Plaintiffs have not demonstrated, prima facially, that the City of Memphis has enacted and enforced its own regulatory scheme for adult-oriented and sexually oriented establishments. This conclusion is based upon the Court's analysis of the relevant provisions and is substantially supported by the Administrator of the City of Memphis Permits Office's affidavit that the "City of Memphis currently has no licensing system specifically for operating or being employed at an adult business." *See* Higgens Aff. ¶ 5. As such, Plaintiffs have not demonstrated a substantial likelihood of success on the merits on this issue.

## C. IRREPARABLE HARM AND BALANCING THE INTERESTS OF THE PARTIES

 Next the Court will address the issue of irreparable harm. Plaintiffs argue that the violation or denial of one's First Amendment right, even for a moment, constitutes irreparable harm warranting injunctive relief. The Court does not dispute Plaintiffs' premise, but rather finds that Plaintiffs have not demonstrated a basis for relief.

Plaintiffs seek injunctive relief to preserve the status quo thus staying enforcement of the Act until the matter is decided on the merits. The propriety of preliminary injunctions was addressed by the United States Court of Appeals for the Sixth Circuit in *Stenberg v. Cheker Oil Co.,* 573 F.2d 921 (6th Cir.1978), which explained as follows:

> It must not be thought, however, that there is any particular magic in the phrase "status quo." The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits. If [sic] often happens that this purpose is furthered by preservation of the status quo, *but not always.* If the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury.

*Id.* at 925 (emphasis added) (citations omitted).

As to whether Plaintiffs will suffer irreparable harm if an injunction is not issued, the Court finds that this factor does weigh in their favor. Plaintiffs have presented the declarations of Cooper and Westlund, which state that they believe

their establishments may suffer adverse impacts if the Act is adopted. Cooper Decl. ¶¶ 10–17; Westlund Decl. ¶¶ 9–15. However, the Court considers this against Plaintiffs failure to demonstrate a likelihood of success on the merits. Because preliminary injunctions are extraordinary remedies, district courts only issue them when necessary. As the Sixth Circuit said in *Stenberg,* the preliminary injunction was created to "preserve the court's ability to render a meaningful decision on the merits." 573 F.2d at 925. Courts use the concept of irreparable harm to assess their capability of rendering meaningful decisions on the merits.

Shelby County, preliminarily, has presented evidence of activities by and at Plaintiffs' establishments which threaten public health and safety, and which potentially violate existing laws and ordinances. Thus when balancing the competing interests of the parties, and when considering the likelihood of Plaintiffs being able to demonstrate a constitutional violation, the Court finds that Plaintiffs fail to demonstrate irreparable harm. The denial of a preliminary injunction at this juncture will not impair the Court's ability to ultimately determine the constitutionality of the Act on the merits.

Additionally, when comparing the competing harms, the scales tip in favor of Defendant Shelby County, and the State Intervenor. As demonstrated by the countless studies relied upon in the adoption of the Act, Shelby County seeks to reduce the criminal activity and other adverse societal impacts associated with these establishments. Shelby County, Tenn. Ord. 344. Additionally, the Act provides criminal penalties and fines for violations and provides for the potential suspension or revocation of the license. Tenn. Code Ann. § 7–51–1119. Such stringent penalties have previously not been available within Shelby County to deter the adverse effects. As such, injunctive relief would undoubtedly cause substantial harm to Shelby County if it were not permitted to enact validly promulgated ordinances during the pendency of this litigation.

## D. PUBLIC POLICY INTERESTS

As to whether the public interest will be served by an injunction, the Court finds that the evidence provided by Shelby County demonstrates that the Act seeks to minimize the adverse effects of sexually oriented businesses upon the community without forbidding such sexually candid expression. Thus, the Court finds that this factor weighs in favor of Shelby County.

## IV. CONCLUSION

In summary, although Plaintiffs may sustain harm from the adoption of the Act in Shelby County, Plaintiffs have not shown a substantial likelihood of success on the merits. Further, Shelby County would suffer greater harm if it were not able to enforce the Act. Plaintiffs have failed to demonstrate irreparable harm, and finally the public interest is served by minimizing the adverse secondary effects of sexually oriented businesses. Accordingly, the factors weighing against injunctive relief outweigh the potential harm to Plaintiffs. Thus, no injunction should issue.

Based upon the foregoing, the Court finds that injunctive relief is not appropriate in this case. The Court declines to stay the Act as its constitutionality may be fully determined in a trial on the merits. Accordingly, Plaintiffs' Motion for Temporary Injunction is DENIED.